Scott SANES and J.W. Stringer, Appellants,

v.

Clayton A. CLARK, Ernest H. Cannon, St. Paul Surplus Lines Insurance Company, Scottsdale Insurance Company, and Westchester Fire Insurance Company, Appellees.

No. 10–99–014–CV.

Court of Appeals of Texas, Waco.

July 26, 2000.

Rehearing Overruled Aug. 23, 2000.

Larry Doherty, Lance Christopher Kassab, Doherty & Wagner, Timothy Andrew Hootman, Houston, for appellant.

Michael S. Knippen, Bollinger, Ruberry & Garvey, Chicago, IL, for Appellee Westchester Fire Insurance Company.

J. Stephen Gibson, Michael W. Huddleston, McCauley, MacDonald, Devin & Huddleston, P.C., Dallas, for Appellee St. Paul Surplus Lines Ins. Co.

James W. Karel, Kevin D. Jewell, Magenheim, Bateman, Robinson, Wrotenberry & Helfand, P.L.L.C., Houston, for Appellee Scottsdale Insurance Company.

Scott Statham, Paul E. Stallings, Vinson & Elkins, L.L.P., Houston, for Appellee Ernest Cannon.

Thomas R. McDade, McDade, Fogler, Maines & Lohse, L.L.P., Houston, for Appellee Clayton A. Clark.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Clayton A. Clark filed a declaratory judgment action against Ernest H. Cannon in Madison County to determine whether Clark was authorized to sign Cannon's name to a settlement and indemnity agreement. Clark executed this agreement with the defendants in an underlying lawsuit in settlement of the claims of Joe and Mimi Staton, Clark's and Cannon's clients. Clark joined Scott W. Sanes, J.W. Stringer, St. Paul Surplus Lines Insurance Company, Scottsdale Insurance Company, Westchester Fire Insurance Company, Lloyd Thompson, Inc., and Hartford Insurance Company, as defendants, because his claims against them arise from the same transaction and because they "would be affected by the declaration" sought. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 15.005 (Vernon Supp.2000), 37.006(a) (Vernon 1997).

Sanes and Stringer filed a motion to transfer venue to Harris County. The court denied the motion and granted partial summary judgments in favor of Clark, Cannon, St. Paul, Scottsdale, and Westchester. Clark, Sanes and Stringer non-suited their claims against Lloyd Thompson and Hartford. The court disposed of any remaining claims by the inclusion of a Mother Hubbard clause in the final judgment. Sanes and Stringer claim in six issues that the court erred by: (1) failing to transfer venue to Harris County; and (2) granting the summary judgment motions of Cannon, Scottsdale,[1] Westchester, St. Paul, and Clark (five issues).

## BACKGROUND

On November 10, 1995, Joe Staton suffered injuries rendering him a quadriplegic while working in Louisiana for Rhinestone Express, a Houston trucking company. Rhinestone personnel assured Joe's wife, Mimi, that Noble Drilling (U.S.), Inc., the company on whose premises he was injured, would take care of his medical bills. Nevertheless, Mimi remained concerned about payment of the bills and expressed her concerns to Rhinestone owner Rickie Kubiak. Kubiak advised Mimi that Stringer could probably help her and arranged for them to talk the next morning.[2]

After talking with Mimi by telephone on November 15, Stringer faxed two contingent fee contracts to Mimi at the intensive care unit of the Louisiana hospital where Joe lay in a semi-conscious state. On that same date, Mimi signed one contract on her own behalf, signed Joe's name to the other, and faxed the documents back to Stringer in Houston. Stringer secured the assistance of Sanes on November 15 as

well. Sanes and Stringer promptly arranged for Joe's transfer by air ambulance to a Houston hospital. They filed suit against Noble Drilling and others in Cameron County on November 17.

The Statons advised Sanes and Stringer respectively by letters dated November 28 and November 30 that they had decided to retain Cannon to represent them. They asked Sanes and Stringer to contact Cannon to discuss payment of their out-of-pocket expenses. Mimi signed a contingency fee contract with Cannon on December 4, "individually and as next friend of Joe Staton." One month later, Cannon retained the services of Clark to assist him in the prosecution of the suit. Mimi signed a separate contract with Clark on May 20, 1996.

Sanes promptly advised St. Paul and Hartford, two of the insurer carriers for the Cameron County defendants, that Stringer and he did not intend to relinquish their claim for attorney's fees. Cannon sent a letter to Sanes on December 4 encouraging him to "pause a moment in the client's interest and argue about the lawyer's fees later." In February 1996, Sanes sent a letter to defense counsel in the Cameron County litigation advising of their continued claim.

Clark settled the Statons' claims in February 1997 for $7.125 million. The parties signed the settlement agreement in Clark's offices, with Clark signing for both himself and Cannon. In the agreement, the Statons agreed to indemnify the defendants and their insurers from any further claims with respect to the incident which formed the basis of their lawsuit. Clark distribut-

---

1. We granted Sanes's and Stringer's motion to dismiss their appeal against Scottsdale Insurance Company in an unpublished order dated December 29, 1999. Thus, we do not reach their third issue which challenges the summary judgment rendered in favor of Scottsdale. *See* Tex.R.App. P. 47.1 (appellate court must address every issue "necessary to final disposition of the appeal").

2. The parties dispute the nature of Kubiak's and Stringer's relationship. The Statons assert that Stringer is Rhinestone Express's corporate counsel, while Kubiak insists that Stringer has represented the company only in some collection matters and "has never been on retainer for me personally or Rhinestone Express."

ed the settlement proceeds pursuant to the Statons' instructions.

Sanes and Stringer discovered that the case had settled when Sanes received a reimbursement check in the amount of $3,881 for his out-of-pocket expenses. On March 4, Sanes sent a letter to Hartford and St. Paul requesting payment of his forty-percent contingency fee. One week later, Sanes sent a similar letter to defense counsel in the Cameron County litigation with copies to Clark, Stringer, Hartford, and St. Paul.

Clark filed the present suit in Madison County in April 1997. He alleges in his petition that Cannon has denied giving him permission to sign Cannon's name "giving indemnity to anyone." Clark asserts that venue is proper in Madison County because Cannon resides there and because a substantial part of the events giving rise to Clark's claim occurred there, as he had numerous conversations with Cannon about the settlement of the Statons' claims at Cannon's residence and office in Madison County.

Clark sought to resolve Sanes's and Stringer's contingency-fee claim in this lawsuit as well, so he joined all parties potentially liable on their claim. Clark alleges that venue is proper in Madison County as to the contingency-fee claim because the parties to this claim will be "affected by the declaration" sought and because this claim arises from the same transaction as his dispute with Cannon. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 15.005, 37.006(a).

Sanes and Stringer filed a motion to transfer venue to Harris County where they reside and office. Clark responded by asserting that venue is proper as to Cannon because he resides in Madison County and they discussed the settlement there and because his claims regarding Sanes and Stringer arise from the same

transaction. The court denied the motion to transfer venue.

The court granted summary judgment motions filed by Clark, Cannon, Scottsdale, Westchester and St. Paul in separate orders. The court denied Sanes's and Stringer's motion for summary judgment against Westchester and St. Paul. Clark non-suited his claim against Hartford. Sanes and Stringer non-suited their cross-claims against Hartford, Lloyd Thompson and the Cameron County defendants whom they named in their third-party petition. The court disposed of any remaining claims by the inclusion of a Mother Hubbard clause in the final judgment.

## VENUE

Sanes and Stringer challenge the court's denial of their motion to transfer venue in their first issue. They claim that venue is improper in Madison County because no real dispute exists between Clark and Cannon regarding Clark's authority to sign the settlement agreement.

 Properly pleaded venue facts are taken as true unless specifically denied. *GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 543 (Tex.1998); TEX.R. CIV. P. 87(3)(a). Sanes and Stringer did not deny in their motion to transfer venue that Cannon resides in Madison County or that Clark and Cannon discussed the settlement agreement there. These are the facts on which Clark relied to establish venue in Madison County. Because Sanes and Stringer did not specifically deny these venue facts, Rule of Civil Procedure 87(3)(a) mandates that they be taken as true. *See Bleeker v. Villarreal*, 941 S.W.2d 163, 175 (Tex.App.—Corpus Christi 1996, writ dism'd by agr.) (op. on reh'g); *Maranatha Temple, Inc. v. Enterprise Prods. Co.*, 833 S.W.2d 736, 740 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Thus, the court did not err by denying the motion to transfer venue.[3]

---

**3.** The Uniform Declaratory Judgments Act permits a party to a contract to seek declaratory relief to establish his rights and obli-

gations under the contract. *See, e.g., Duenas v. Garland Indep. Sch. Dist.*, 961 S.W.2d 19, 22 (Tex.App.—Dallas 1996, no writ); *Trans-*

Accordingly, we overrule Sanes's and Stringer's first issue.

## PROPRIETY OF SUMMARY JUDGMENT

Sanes and Stringer argue in their second, fourth, fifth and sixth issues respectively that the court erred in granting Cannon's, Westchester's, St. Paul's, and Clark's (collectively, "Appellees") motions for summary judgment. Appellees asserted numerous grounds for summary judgment in their motions. The trial court granted their motions without stating the basis for its ruling.

### STANDARD OF REVIEW

To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Nixon v. Mr. Prop. Mgt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965); *Kehler v. Eudaly,* 933 S.W.2d 321, 324 (Tex.App.—Fort Worth 1996, writ denied). We indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in its favor. *American Tobacco,* 951 S.W.2d at 425. "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

*portation Ins. Co. v. Franco,* 821 S.W.2d 751, 754 (Tex.App.—Amarillo 1992, writ denied); TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). Sanes and Stringer did not challenge the joinder of Clark's claims involving them with his claim against Cannon. *See, e.g., Safeway Managing Gen. Agency v. Cooper,* 952 S.W.2d 861, 868–69 (Tex.App.—Amarillo 1997, no pet.); TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a) (Vernon 1997); TEX.R. CIV. P. 41. Assuming without deciding that Clark's

### SANES

■ Appellees allege an entitlement to judgment against Sanes because he has no written contract with the Statons. Sanes does not dispute that he has no written contract. Rather, he argues that a fact issue exists on the question of whether the Statons notified him of their intent to avoid their alleged agreements with him.

Section 82.065 of the Government Code expressly provides that contingent fee contracts must be in writing. TEX. GOV.CODE ANN. § 82.065(a) (Vernon 1998). An oral contingent fee contract is voidable by the client. *See id.* § 82.065(b) (Vernon 1998); *see also Enochs v. Brown,* 872 S.W.2d 312, 318 (Tex.App.—Austin 1994, no writ). Sanes contends that a question of fact exists on the issue of whether the Statons ever expressly notified him of an intention to avoid their alleged agreements. He refers to the letters Mimi wrote to Stringer and himself less than two weeks after she signed the contracts with Stringer.

In these letters, she advised them:

1. she had decided to retain other counsel (Cannon);

2. she desired that they send the file to Cannon;

3. Cannon "w[ould] be solely handling" the case;

4. Sanes and Stringer "w[ould] no longer be associated with the case";

5. they should forward a list of their expenses to Cannon for reimbursement; and

6. she appreciated their efforts in the Statons' behalf.

claims involving Sanes and Stringer were not properly joined with his claim against Cannon, Sanes and Stringer failed to preserve any error arising from this misjoinder because they failed to raise the issue in the court below. *See Bleeker v. Villarreal,* 941 S.W.2d 163, 175 (Tex.App.—Corpus Christi 1996, writ dism'd by agr.) (op. on reh'g); *University of Tex. v. Hinton,* 822 S.W.2d 197, 200 (Tex. App.—Austin 1991, no writ); TEX.R.APP. P. 33.1(a)(1)(A).

By these letters, Mimi clearly and unequivocally informed Sanes and Stringer that she was terminating the attorney-client relationship created by the contracts she signed with Stringer and arguably by Stringer's retention of Sanes. Thus, she expressly informed them of her intent to avoid the alleged agreements.

Because Sanes has no written contract with the Statons, their alleged agreements to allow him to represent them on a contingent-fee basis are voidable. *See* TEX. GOV. CODE ANN. § 82.065(b); *Enochs,* 872 S.W.2d at 318. Mimi gave Sanes express notice of her intent to avoid their alleged agreements. Accordingly, Appellees conclusively established their entitlement to judgment as a matter of law as against Sanes. *See American Tobacco Co.,* 951 S.W.2d at 425; *Nixon,* 690 S.W.2d at 548.

## STRINGER

■ One of the grounds on which Appellees challenge Stringer's contracts with Joe and Mimi is that the contracts authorize Stringer to settle the case without the consent of his clients. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.0(2)(a)(2), *reprinted in* TEX. GOV.CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9). Rule 1.02(a)(2) mandates that an attorney "abide by a client's decision" regarding whether to accept a settlement offer. *Id.* The comments following this Rule provide in pertinent part:

2. Except where prior communications have made it clear that a particular proposal would be unacceptable to the client, a lawyer is obligated to communicate any settlement offer to the client in a civil case. . . .

3. A lawyer should consult with the client concerning any such proposal, and generally it is for the client to decide whether or not to accept it. This principle is subject to several exceptions or qualifications. First, in class actions a lawyer may recommend a settlement of the matter to the court over the objections of named plaintiffs in the case. Second, in insurance defense cases a lawyer's ability to implement an insured client's wishes with respect to settlement may be qualified by the contractual rights of the insurer under its policy. Finally, a lawyer's normal deference to a client's wishes concerning settlement may be abrogated if the client has validly relinquished to a third party any rights to pass upon settlement offers.

. . . .

5. An agreement concerning the scope of representation must accord with the Disciplinary Rules of Professional Conduct and other law. Thus, the client may not be asked . . . to surrender . . . the right to settle or continue litigation that the lawyer might wish to handle differently.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02 cmts. 2, 3, 5.

Stringer's contracts each provide in pertinent part:

I/We fully authorize my said attorney to bring suit, if necessary, and to prosecute the same to final judgment and to compromise and settle this claim, with or without suit, in any manner which they may deem necessary, including signing my/our names to finalize such settlement.

The contracts authorize Stringer to settle the Statons' claims without any further consultation with the Statons. This clearly violates Rule 1.02(a)(2). *See id.* 1.02(a)(2) & cmts. 2, 3, 5. Because the contracts violate this rule, they are voidable at the Statons' option. *See* TEX. GOV.CODE ANN. § 82.065(b); *Enochs,* 872 S.W.2d at 318.

We have already determined that the Statons notified Stringer of their intent to avoid the contracts. Therefore, Appellees conclusively established their entitlement to judgment as a matter of law as against Stringer. Accordingly, we overrule Sane's and Stringer's second, fourth, fifth and sixth issues.

We affirm the judgment.