**TILLERY & TILLERY, Edwards & Tillery, and Dale B. Tillery, Appellants,**

v.

**ZURICH INSURANCE COMPANY d/b/a Zurich American Insurance Co., Appellee.**

No. 05–00–00204–CV.

Court of Appeals of Texas, Dallas.

July 25, 2001.

Dale B. Tillery, Carl D. Tillery, Tillery & Tillery, Dallas, for Appellant.

Daniel Tostrud, Hermes, Sargent & Bates, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, MOSELEY, and FITZGERALD.

## OPINION

Opinion by Justice MORRIS.

This appeal follows a trial before the court without a jury. Tillery & Tillery, Edwards & Tillery, and Dale B. Tillery contest the trial court's judgment that they take nothing by their claims against Zurich Insurance Company d/b/a Zurich American Insurance Company. Tillery contends the trial court erred in holding that a contingent fee agreement with Zurich was unenforceable. Tillery also contends the trial court erred in failing to make findings of fact relating to the issues of ratification and estoppel. We conclude the trial court correctly held that Tillery was not entitled to enforce the contingent fee agreement because Zurich voided the agreement before Tillery had fully performed. We further conclude the trial court did not err in refusing to make the additional findings of fact requested by Tillery. Because of our conclusions, we affirm the trial court's judgment.

## I.

The facts of this case are relatively simple. Zurich Insurance Company contacted Dale B. Tillery for the purpose of retaining his legal services in a medical malpractice action. Zurich wanted to file suit against several health care providers who had treated one of its insureds. The company believed the providers had mishandled the insured's medical treatment and thereby unnecessarily increased the medical expenses it was obligated to pay. Zurich asked Tillery to handle the malpractice case on a contingent fee basis.

During discussions about the case, it was revealed that Zurich's insured, through his own attorney, was already pursuing two products liability actions in Texas to recover damages for his injuries, including his medical expenses. Tillery noted that Zurich could potentially recover the money it had paid for the insured's medical care by virtue of a subrogation claim in the insured's products liability cases. It was agreed, therefore, that Tillery would pursue both a medical malpractice claim and an intervention in the products liability cases to assert Zurich's subrogation rights. On July 2, 1993, Tillery sent Zurich a letter setting out the terms of their agreement. The letter stated in pertinent part that Zurich was retaining Tillery "to pur-

sue an intervention claim for subrogation and a medical malpractice claim" and "Zurich will assign one-third (⅓) of any recovery as a result of the third party medical malpractice claim or the intervention claim as attorney's fees for services related to those matters." The letter concluded by asking "if I have misstated our contingency arrangement ... please contact me as soon as possible, otherwise I will proceed as set forth herein." Zurich concedes it received the letter and never responded.

In accordance with the agreement, Tillery filed both a medical malpractice suit and an intervention claim. Three months later, Zurich decided its in-house counsel, Herman Veness, should be responsible for pursuing the intervention. Zurich told Veness to file another plea in intervention on Zurich's behalf. Zurich never specifically told Tillery it was terminating its agreement with him with respect to the intervention claim. Tillery was instructed, however, to take no further action on the intervention. Tillery talked with Veness and agreed that Veness would be responsible for all the discovery in the intervention claim. From that time on, Tillery rendered no legal services in the intervention case and confined his work to the malpractice action.

Meanwhile, a suit identical to the Texas products liability cases was brought in Arkansas. Zurich retained a lawyer named Bill Frye to file an intervention on Zurich's behalf in the Arkansas case and orally agreed to pay him a contingent fee. The Texas and Arkansas products liability suits ultimately settled, and Zurich recovered $143,620.96 as a result of its interventions. Frye was paid his contingent fee out of this recovery.

Summary judgment was granted against Zurich in its medical malpractice suit, and Tillery filed an appeal on Zurich's behalf. The case settled in October 1995 when the defendants agreed to dismiss their counterclaims against Zurich in exchange for Zurich dismissing the appeal. Because Zurich did not recover any money in the medical malpractice case, there was no basis to pay Tillery a contingent fee in that suit. Zurich reimbursed Tillery, however, for the court costs and litigation expenses associated with the malpractice case. Shortly thereafter, Tillery sent a written demand to Zurich for one-third of the amount Zurich recovered by virtue of its intervention in the products liability suits. Zurich refused this demand, as well as three later demands for payment. Tillery then sued Zurich.

After a trial on the merits, the trial court concluded Zurich had the right to terminate its fee agreement with Tillery at any time and that it did so before Tillery had any vested interest in the intervention claim. Specifically, the trial court held that Zurich voided the agreement with respect to the intervention claim before Tillery had fully performed his obligations under the agreement. Based on this conclusion, the trial court held that Tillery was not entitled to one-third of Zurich's recovery from its successful intervention. The trial court made findings of fact and conclusions of law, to which Tillery objected. Tillery also made requests for amended and additional findings of fact and conclusions of law. The trial court granted some of Tillery's requests, but denied others including Tillery's request that the court make specific fact findings relating to the issues of ratification and estoppel, which Tillery had asserted.

Tillery appeals both the trial court's judgment and its refusal to make additional findings of fact. Tillery does not, however, challenge the facts that were found by the trial court.

## II.

Tillery sets out six issues on appeal. The first, second, third, and sixth issues all relate to the trial court's refusal to enforce the contingent fee agreement set out in Tillery's letter to Zurich. Tillery argues the facts conclusively show a binding agreement that Zurich breached. Central to our discussion of whether the fee agreement was binding on Zurich is section 82.065 of the Texas Government Code. Section 82.065 states that "[a] contingent fee contract for legal services must be in writing and signed by the attorney and the client." TEX.GOV'T CODE ANN. § 82.065 (Vernon 1998). Tillery concedes his July 2 letter to Zurich did not meet the requirements of section 82.065 because Zurich did not sign the agreement. Tillery argues, however, that this fact alone does not render the agreement unenforceable.

■ A contingent fee agreement that does not meet the requirements of section 82.065 is voidable by the client. *See Sanes v. Clark,* 25 S.W.3d 800, 804 (Tex.App.— Waco 2000, pet. denied). One way a client may void the agreement is by expressing its intent to do so before the attorney has fully or substantially performed. *See id.* at 805. This is exactly what Zurich did. After Tillery filed the intervention claim, but before he had done any substantial work on the case, Zurich informed him he was to take no further action on the intervention. Tillery then spoke with Zurich's in-house counsel and agreed to transfer the pretrial discovery responsibilities to him. Pursuant to Zurich's instructions, Tillery never performed any legal work on the intervention claim after that time. By telling Tillery to stop work on the case and then transferring the legal work to its in-house counsel, Zurich clearly demonstrated its intent to void any agreement with Tillery with respect to the intervention action.

Tillery argues his contingent fee agreement with Zurich is enforceable under the reasoning of *Enochs v. Brown,* 872 S.W.2d 312 (Tex.App.—Austin 1994, no writ). In *Enochs,* the court held a contingent fee agreement may be enforceable even though it does not meet the requirements of section 82.065. *See id.* at 319. But there are two significant differences between *Enochs* and this case. First, the fee agreement in *Enochs* was signed by the client, but not by the attorney. The court applied a statute of frauds analysis to hold that a contract may be enforced under certain circumstances when it is signed by the party to be charged. *See id.* at 318. Because Zurich did not sign the fee agreement at issue here, the statute of frauds analysis employed in *Enochs* does not apply.

■ Second, the attorney in *Enochs* had completed all of the work in the underlying litigation before he sought to enforce his fee agreement. The court applied a quasi-estoppel theory of recovery to conclude it would be unconscionable to allow the client to challenge an agreement he signed after accepting all the benefits of the contract. *See id.* at 317. In this case, the only benefit of Tillery's services Zurich arguably accepted in the intervention case before refusing to honor the agreement was the preparation and filing of the intervention pleadings. In fact, Zurich specifically told Tillery to cease work on the intervention claim and then transferred responsibility for the case to its in-house counsel. Based on the facts in this case, there is nothing unconscionable about refusing to pay Tillery a contingent fee for a case in which he only filed the original pleadings. Accordingly, we decline to extend *Enochs* to the facts presented in this case.

■ Tillery suggests that, by filing the original pleadings, he fully performed un-

der the terms of the agreement and is therefore entitled to his fee. In support of this argument, Tillery points to two of the trial court's findings of fact. In Finding of Fact No. 4, the trial court stated that "Tillery was requested to protect Zurich's worker compensation subrogation rights by: (a) filing interventions in pending Texas lawsuits . . . and (b) filing a medical malpractice case. . . ." In Finding of Fact No. 10 the trial court stated that "[o]n July 30, 1993, Tillery filed, on behalf of Zurich, an original petition in the medical malpractice case and pleas in intervention in the two [Texas lawsuits]." Based on these two findings of fact, Tillery argues he did all the work he was requested to do and the trial court's conclusion that Zurich terminated the agreement before he had fully performed is in conflict with its findings of fact.

Tillery's argument ignores the remainder of the trial court's findings of fact, as well as the terms of the fee agreement he is attempting to enforce. In addition to finding that Tillery was requested to file an intervention and a malpractice case, the trial court also found that Tillery agreed to *pursue* the two cases on Zurich's behalf in exchange for a contingent fee. Similarly, the letter Tillery sent to Zurich outlining the fee arrangement stated that Zurich was retaining Tillery to "pursue" an intervention claim for subrogation and a medical malpractice claim. Nowhere is it shown that Tillery's obligations to represent Zurich would be discharged after merely filing the initial pleadings. Therefore, contrary to Tillery's argument, the filing of the original petitions cannot be considered full performance under the terms of the agreement.

 As an alternative to his argument that he fully performed, Tillery contends his performance under the agreement was excused because Zurich prevented him from fully performing. Tillery relies on the general rule that when a client discharges an attorney without good cause before he has completed his work, the attorney may recover on the fee contract for the agreed amount of his compensation. *See Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex.1969). This rule, however, assumes an enforceable fee contract, and it is the plaintiff's burden to establish the existence of a valid contract. *See Howell v. Kelly*, 534 S.W.2d 737, 740 (Tex.App.—Houston [1st Dist.] 1976, no writ).

In this case, Tillery concedes the fee agreement at issue was one that was voidable by Zurich because it did not meet the requirements of section 82.065. Because the agreement was voidable, Zurich's transfer of responsibility for the intervention claim to its in-house counsel was not a repudiation of a binding contract, but rather a permissible exercise of its right to avoid the agreement. *See Sanes*, 25 S.W.3d at 804–05. Zurich's instruction to Tillery to stop all work on the intervention claim did not "excuse" Tillery's performance; it voided the agreement necessitating such performance. The trial court correctly concluded that Tillery's fee agreement with Zurich with respect to the intervention claim was unenforceable because it was voided before Tillery had fully performed. We resolve the first, second, third, and sixth issues against Tillery.

 The two remaining issues raised by Tillery concern the trial court's refusal to make additional findings of fact relevant to Tillery's theories of ratification and estoppel. In general, the failure to make additional findings of fact and conclusions of law after a timely request requires reversal unless the record affirmatively shows the complaining party has not suffered an injury. *Landscape Design & Const., Inc. v. Harold Thomas Excavating,*

*Inc.,* 604 S.W.2d 374, 378 (Tex.App.—Dallas 1980, writ ref'd n.r.e.). If the complainant's requested findings, however, are directly contrary to, or inconsistent with the original findings, the trial court need not make them. *Kirby v. Chapman,* 917 S.W.2d 902, 909 (Tex.App.—Fort Worth 1996, no writ). Furthermore, a trial court may properly refuse to make additional findings about matters that are already adequately addressed by the original findings. *Id.*

The additional findings requested by Tillery relate to Zurich's alleged acceptance of "all the benefits of the agreement between Zurich and Tillery." [1] A finding that Zurich accepted all the benefits of the contract would be directly contrary to the trial court's findings that Zurich instructed Tillery to stop working on the intervention claim soon after it was filed, and Tillery, in fact, discontinued all work on the claim at that time. The trial court's findings specifically indicate that Zurich did *not* accept all the benefits of the agreement with respect to the intervention claim. The trial court did not err, therefore, in refusing to make the additional findings of fact requested by Tillery. We resolve the fourth and fifth issues against Tillery.

We affirm the trial court's judgment.

---

1. The additional findings of fact requested by Tillery included the following:
 1. Zurich accepted all the benefits of the agreement between Zurich and Tillery, which is set forth in the written memorandum of July 2, 1993 sent by Tillery and received by Zurich.
 2. Zurich knowingly accepted Tillery's legal services in pursuit of Zurich's intervention claim and Zurich's medical malpractice claim.
 3. Zurich accepted the benefits of the parties' contingent fee agreement.
 4. Zurich acquiesced in the contingent fee agreement as set forth in the written memorandum of July 2, 1993.
 5. Tillery performed valuable legal services in pursuit of the intervention claim and the medical malpractice claim.