Opinion issued July 2, 2009






 










In TheCourt of Appeals

For The

First District of Texas






NO. 01-09-00112-CV





JOHN L. COBB, JR., Appellant


V.


STERN, MILLER & HIGDON, Appellee






On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2008-53569






O P I N I O N


 In this interlocutory appeal, appellant, John L. Cobb, Jr., appeals from the trial
court's order denying his special appearance in the lawsuit filed by appellee, Stern,
Miller & Higdon, a law firm based in Houston (hereafter "the firm"). See Tex. Civ.
Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2008). In three issues, Cobb
contends the trial court erred by denying his special appearance because (1) he was
allowed to amend his special appearance to amend defects; (2) he is not subject to
personal jurisdiction in Texas; and (3) the forum selection clause in the agreement
with the firm is not enforceable under Louisiana law. We conclude that Cobb
properly amended his special appearance and that he is not subject to personal
jurisdiction in Texas. We therefore reverse and render judgment dismissing the suit
against Cobb.

Background Cobb was a Louisiana resident who was injured in April 2005 in Louisiana
while working as a member of the crew of an anchor boat for his employer, a
Louisiana company. Cobb did not work or have property in Texas, nor did he
regularly travel to Texas. Although Cobb had no contact with Texas, the firm went
to Louisiana to seek to have the firm represent Cobb in a lawsuit concerning his
accident. Jeffrey Stern, a principal with the firm, traveled to Louisiana to discuss the
possible representation of Cobb.

 Two months after the accident, one of the firm's representatives drove Cobb
to the firm's Houston office for the purpose of having Cobb sign a contingency fee
agreement entitled, "Power of Attorney and Engagement Agreement" (the
Agreement). The Agreement contained a forum selection clause that stated,

 This Agreement shall be construed under and in accordance with the
laws of the State of Texas and the rights duties and obligations of Client
and Attorneys regarding the Attorneys' representation of client and
regarding any matter covered by this Agreement shall be governed by
the laws of the state of Texas. Subject to the requirements of Section 10
hereof, any controversy between Client and Attorneys or either of them
regarding Attorneys' representation of Client or regarding anything
covered by this Agreement will be filed in a court of competent
jurisdiction in Harris County, Texas.


 The firm began an investigation, expended funds on behalf of Cobb, and
referred Cobb's case to a Louisiana attorney. Within three weeks of Cobb's signing
of the Agreement, the Louisiana attorney filed suit in July 2005 on behalf of Cobb in
the United States District Court for the Eastern District of Louisiana. Fourteen days
after the lawsuit was filed, Cobb terminated both the firm and the Louisiana attorney,
and returned the firm's check to the firm. Cobb told the firm in writing that he had
decided to go back to work for the company that had caused his injuries in Louisiana. 
Three days after firing the firm, Cobb personally settled the claims that were the
subject of the Louisiana lawsuit without paying the firm's costs or fees. 

 The firm filed suit for breach of contract against Cobb in Harris County. Cobb
responded with a special appearance that he later amended. Although Cobb
acknowledged that he signed the Agreement at the firm's Houston office, he
contended the Agreement was made "under circumstances rendering it void and
therefore unenforceable as a matter of law." Cobb asserted that the firm's use of
"runners to solicit business in Louisiana" was the subject of a disciplinary petition
filed by the State Bar of Texas. Cobb was listed as a person with relevant knowledge
of that lawsuit. Cobb also claimed when he signed the Agreement he did not
understand that the Agreement had a forum selection clause.

 The firm responded that Texas had general and specific jurisdiction over Cobb
because Cobb traveled Texas to sign the Agreement with the firm, the law firm
performed legal work in Texas, and Cobb fired the firm by sending the notice of
termination to Texas. 

 Although the 11th District Court initially granted the special appearance, the
special appearance was denied by the 151st District Court when that court granted the
firm's motion for new trial.

Special Appearance

 In his second and third issues, Cobb contends that he lacks sufficient minimum
contacts with Texas to support the exercise of personal jurisdiction over him and that
the forum selection clause cannot be used to obtain jurisdiction over him.


 A. De Novo Review

 A legal conclusion concerning the existence of personal jurisdiction is a
question of law subject to de novo review. Am. Type Culture Collection Inc. v.
Coleman, 83 S.W.3d 801, 805-06 (Tex. 2002); BMC Software Belg., N.V. v.
Marchand, 83 S.W.3d 789, 794 (Tex. 2002). "[W]e review de novo if the underlying
facts are undisputed or otherwise established." Preussag Aktiengesellschaft v.
Coleman, 16 S.W.3d 110, 113 (Tex. App.--Houston [1st Dist.] 2000, pet. dism'd
w.o.j.). 

 The general rule is that an interested witness "does no more than raise a fact
issue to be determined by the jury." Rosenblatt v. Freedom Life Ins. Co. of America,
240 S.W.3d 315, 321 (Tex. App.--Houston [1st Dist] 2007, no pet.) (citing Ragsdale,
801 S.W.2d at 882). Under the exception to this rule, evidence is taken as true as a
"matter of law" when the testimony of an interested witness is not contradicted by any
other witness, or attendant circumstances, and the same is clear, direct and positive,
and free from contradiction, inaccuracies, and circumstances tending to cast suspicion 
thereon. Id. The exception is "especially true," the court observed, when "the
opposing party has the means and opportunity of disproving the testimony," but did
not object. Id. 

 Stern filed an affidavit describing the Agreement signed by Cobb, but he did
not dispute the statements made by Cobb concerning how Cobb was solicited by the
law firm and Stern in Louisiana. Under these circumstances, Cobb's affidavit must
be taken as true as a matter of law because the firm and Stern did not challenge the
facts stated in the affidavit, even though they had the means and opportunity of
disproving the testimony. Cobb's affidavit is clear, direct, and positive. There are
no circumstances tending to cast suspicion on Cobb's affidavit. Although the
admissions made by Cobb acknowledged that he had read the Agreement before he
signed it, he later corrected those admissions to make clear that he did not read the
Agreement before he signed it. Therefore, the evidence before the court was free
from contradiction and inaccuracies. Even if we determined there was an
inconsistency concerning whether Cobb read the Agreement before he signed it, there
is no dispute or inconsistency concerning Cobb's statements that Stern and employees
from the firm solicited him in Louisiana, which is the sole pertinent issue before us
in this appeal. Because Cobb's affidavit must be taken as true as a matter of law, we
conduct a de novo review. See id. 

 B. The Law of Special Appearance

 A plaintiff bears the initial burden of pleading allegations sufficient to bring
a non-resident defendant within the terms of the Texas long-arm statute. Am. Type
Culture Collection, 83 S.W.3d at 807. "The nonresident defendant then assumes the
burden of negating all bases of jurisdiction in those allegations." Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007). The firm's pleadings
asserted jurisdiction over Cobb based on Cobb's traveling to Texas to sign the
Agreement, the Agreement's forum selection clause, the firm's legal work done in
Texas, and Cobb's letter sent to Texas to terminate the firm. Cobb's response negates
each of these allegations.

 A court may assert personal jurisdiction over a non-resident defendant if the
requirements of the Due Process Clause of the United States Constitution (1) and the
Texas long-arm statute (2) are both satisfied. Helicopteros Nacionales de Colombia,
S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984); CSR Ltd. v. Link, 925
S.W.2d 591, 594 (Tex. 1996). "Because the Texas long-arm statute reaches 'as far
as the federal constitutional requirements of due process will allow,' the statute is
satisfied if the exercise of personal jurisdiction comports with federal due process." 
Preussag Aktiengesellschaft, 16 S.W.3d at 113 (quoting CSR Ltd., 925 S.W.2d at
594). We thus examine only whether a Texas court's exercise of jurisdiction over
Cobb would comport with the requirements of federal due process. See CSR, Ltd.,
925 S.W.2d at 594.

 "Federal due process requirements are two-fold." Id. "First, the nonresident
defendant must have purposefully established such minimum contacts with the forum
state that it could reasonably anticipate being sued there." Id. (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)). "Second, if
the nonresident defendant has purposefully established minimum contacts with the
forum, the exercise of jurisdiction must comport with fair play and substantial
justice." Id.

 In deciding whether a defendant has sufficient minimum contacts, "[i]f the
nonresident defendant has purposefully availed itself of the privileges and benefits
of conducting business in a state, it has sufficient contacts to confer personal
jurisdiction." Id. (citing Burger King, 471 U.S. at 475, 105 S. Ct. at 2183). 
"Random, fortuitous, or attenuated contacts do not suffice." Id. (citing Burger King,
471 U.S. at 475, 105 S. Ct. at 2183). 

 To assess whether a non-resident defendant has purposefully availed himself
of the privileges and benefits of conducting business in Texas, we examine three
elements. See Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 785
(Tex. 2005). First, only the defendant's own actions may constitute purposeful
availment. Id. (citing Burger King, 471 U.S. at 475, 105 S. Ct. at 2183). Second, the
defendant's acts must be purposeful, and a showing of random, isolated, or fortuitous
contacts is insufficient. Id. (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770,
774, 104 S. Ct. 1473, 1478 (1984)). It is the quality, rather than the quantity of the
contacts that is determinative. Silbaugh, 126 S.W.3d at 95. Third, a defendant must
seek some benefit, advantage, or profit through his purposeful availment. Holten, 168
S.W.3d at 785 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297,
100 S. Ct. 559, 567 (1980)).

 Minimum-contacts analysis is further divided into general jurisdiction and
specific personal jurisdiction. Preussag Aktiengesellschaft, 16 S.W.3d at 114. 
General jurisdiction does not require that the cause of action relate directly to the
defendant's contacts with the forum. Preussag Aktiengesellschaft, 16 S.W.3d at 114
(citing CSR, Ltd., 925 S.W.2d at 595). However, to negate general jurisdiction a
defendant must show that its contacts in Texas were not "continuous and systematic." 
Id. To support general jurisdiction, the defendant's forum activities must have been
"substantial," which requires stronger evidence of contacts than for specific
jurisdiction. Id.

 A court may exercise specific personal jurisdiction over a non-resident
defendant if (1) the non-resident purposely directed its activities toward the forum
state or purposely availed itself of the privileges of conducting activities there and (2)
the controversy arises out of or is related to the non-resident's contacts with the forum
state. BMC Software, 83 S.W.3d at 796. An individual's contract with an out-of-state
party alone does not automatically establish minimum contacts in the other party's
home state. Burger King, 471 U.S. at 478, 105 S. Ct. at 2185. Rather, "prior
negotiations and contemplated future consequences, along with the terms of the
contract and the parties' actual course of dealing . . . must be evaluated in determining
whether the defendant purposefully established minimum contacts within the forum." 
Id. at 479, 105 S. Ct. at 2185.

 C. Law Concerning Attorney Solicitation of Clients

 Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct states,

 (a) A lawyer shall not by in-person contact . . . seek professional
employment concerning a matter arising out of a particular occurrence
or event . . . from a prospective client or nonclient who has not sought
the lawyer's advice regarding employment or with whom the lawyer has
no family or past or present attorney-client relationship when a
significant motive for the lawyer's doing so is the lawyer's pecuniary
gain. . . .


Tex. Disciplinary R. Prof'l Conduct 7.03 (1995), reprinted in Tex. Gov't Code
Ann., tit. 2, subtit. G, app. A (Vernon 2005).

 Rule 5.03 provides,

 With respect to a nonlawyer employed or retained by or associated with
a lawyer:

 

 . . .


 (b) a lawyer shall be subject to discipline for the conduct of such a
person that would be a violation of these rules if engaged in by a
lawyer if:


 (1) the lawyer orders, encourages, or permits the
conduct involved . . . .

 

Tex. Disciplinary R. Prof'l Conduct 5.03 (1990), reprinted in Tex. Gov't Code
Ann., tit. 2, subtit. G, app. A (Vernon 2005).

 The Texas Government Code, section 82.065, entitled "Contingent Fee
Contract for Legal Services," states,

 A contingent fee contract for legal services is voidable by the client if
it is procured as a result of conduct violating the laws of this state or the
Disciplinary Rules of the State Bar of Texas regarding barratry by
attorneys or other persons.


Tex. Gov't Code Ann. § 82.065(b) (Vernon 2005). "Barratry is the solicitation of
employment to prosecute or defend a claim with intent to obtain a personal benefit." 
State Bar of Texas v. Kilpatrick, 874 S.W.2d 656, 659 (Tex. 1994). A client may void
a contingent fee contract that violates section 82.065 by expressing his intent to do
so before the attorney has fully or substantially performed. Tillery & Tillery v. Zurich
Ins. Co., 54 S.W.3d 356, 359 (Tex. App.--Dallas 2001, pet. denied) (citing Sanes v.
Clark, 25 S.W.3d 800, 805 (Tex. App.--Waco 2000, pet. denied)). 

 D. Analysis

 Although the firm responded to Cobb's special appearance motion, it did not
refute any of Cobb's statements that he had no contacts with Texas, other than the
single occurrence when the firm's employee transported Cobb to Texas to sign the
Agreement with the forum selection clause, which resulted in the legal services
provided by the firm. This event fails to establish general jurisdiction over Cobb
because there is no evidence of substantial, continuous or systematic contacts with
Texas. See Preussag Aktiengesellschaft, 16 S.W.3d at 114. 

 This event also fails to establish specific jurisdiction over Cobb. Cobb's
undisputed affidavit states that the firm's representatives contacted him in Louisiana
and Stern flew to Louisiana to meet with Cobb for the purpose of obtaining Cobb as
a client. Cobb had no prior relationship with the firm. The firm's actions, as alleged
in Cobb's unrefuted affidavit, violated rules 5.03 and 7.03 of the Disciplinary Rules
of Professional Conduct. Therefore, the contingent fee contract was voidable by
Cobb. See Tex. Gov't Code Ann. § 82.065(b). Approximately one month after
signing the contingent fee contract and two weeks after the Louisiana lawyer filed
suit, Cobb sent notice to the firm stating, "Thank you for your help, but I don't need
you to be my lawyer. I am returning your check." This was sufficient to void the
contingent fee contract because it occurred before the attorney fully or substantially
complied. See Tillery, 54 S.W.3d at 359; Sanes, 25 S.W.3d at 805.

 The sole basis the firm alleges to support jurisdiction is the Agreement that
formed the attorney-client relationship. But the Agreement was voided by Cobb.
Because the primary purpose of the Agreement --a contingent fee agreement for legal
services--was voided pursuant to the Government Code, and activity stemming from
the void Agreement was the only contact with Texas, there is no evidence to establish
specific jurisdiction. See CSR, Ltd., 925 S.W.2d at 594 (stating first requirement of
personal jurisdiction is that defendant have "contacts" with state) (citing Burger King,
471 U.S. at 475, 105 S. Ct. at 2183). Moreover, it would violate the public policy of
Texas for a court to allow enforcement of an agreement obtained in violation of the
disciplinary rules for attorneys. See In re AIU Ins. Co., 148 S.W.3d 109, 115 (Tex.
2004) (stating forum selection clause obtained by fraud or overreaching or
"contraven[ing] a strong public policy" of selected forum not enforceable). 

 We hold that the trial court erred by determining that it could exercise specific
jurisdiction over Cobb. 

 We sustain Cobb's second issue. 

Amending a Special Appearance 

 In his first issue, Cobb asserts he was entitled to cure the defect in his special
appearance. In its motion for new trial, the firm contended that Cobb's motion was
not sworn and his amended motion was filed too close to the beginning of the hearing
to be considered by the trial court.

 Rule 120a of the Texas Rules of Civil Procedure provides that a "special
appearance shall be made by sworn motion . . . and may be amended to cure defects." 
Tex. R. Civ. P. 120a(1). A special appearance that is unsworn or unverified is
defective; however "an amendment that adds a verification cures the special
appearance." Dawson-Austin v. Austin, 896 S.W.2d 319, 322 (Tex. 1998). The
amended special appearance may be filed anytime before a general appearance is
made. Id. Rule 120a also provides that affidavits concerning the special appearance
"shall be served at least seven days before the hearing." Tex. R. Civ. P. 120a(3).

 Here, Cobb filed an amended special appearance to correct the defect of his
timely filed special appearance. The firm does not contend that the amended special
appearance is defective. Cobb's amended special appearance cured the defective
verification of his original special appearance. See Dawson-Austin, 896 S.W.2d at
322. The firm filed a motion for new trial for reconsideration of the special
appearance ruling in favor of Cobb. One ground asserted in the motion was the
timeliness of the filing of the amended special appearance. At the time the trial court
granted a new trial in favor of the firm, the amended special appearance and affidavit
had been on file with the district court for about six weeks, a period far beyond the
seven days required by rule. See Tex. R. Civ. P. 120a(3). We hold the amended
special appearance and affidavit were properly before the trial court. 

 We sustain Cobb's first issue. Having sustained Cobb's first and second
issues, we need not address his third issue concerning the validity of the forum
selection clause under Louisiana law.

Conclusion

 We reverse the trial court's order denying Cobb's special appearance and
render judgment dismissing the case against Cobb for lack of personal jurisdiction.




 Elsa Alcala

 Justice


Panel consists of Justices Jennings, Alcala, and Higley.
1. U.S. Const. amend. XIV, § 1.
2. See Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997)
.