John L. COBB, Jr., Appellant,

v.

STERN, MILLER & HIGDON,
Appellee.

No. 01–09–00112–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 2, 2009.

Rehearing Overruled Sept. 4, 2009.

Christina K. Schovajsa, Robert L. Klawetter, Houston, TX, for Appellant.

Daniel Farris Crowder, Crowder, L.L.P., Houston, TX, Deborah L. Bradley, Bellaire, TX, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

In this interlocutory appeal, appellant, John L. Cobb, Jr., appeals from the trial court's order denying his special appearance in the lawsuit filed by appellee, Stern, Miller & Higdon, a law firm based in Houston (hereafter "the firm"). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp. 2008). In three issues, Cobb contends the trial court erred by denying his special appearance because (1) he was allowed to amend his special appearance to amend defects; (2) he is not subject to personal jurisdiction in Texas; and (3) the forum selection clause in the agreement with the firm is not enforceable under Louisiana law. We conclude that Cobb properly amended his special appearance and that he is not subject to personal jurisdiction in Texas. We therefore reverse and render judgment dismissing the suit against Cobb.

## Background

Cobb was a Louisiana resident who was injured in April 2005 in Louisiana while working as a member of the crew of an anchor boat for his employer, a Louisiana

company. Cobb did not work or have property in Texas, nor did he regularly travel to Texas. Although Cobb had no contact with Texas, the firm went to Louisiana to seek to have the firm represent Cobb in a lawsuit concerning his accident. Jeffrey Stern, a principal with the firm, traveled to Louisiana to discuss the possible representation of Cobb.

Two months after the accident, one of the firm's representatives drove Cobb to the firm's Houston office for the purpose of having Cobb sign a contingency fee agreement entitled, "Power of Attorney and Engagement Agreement" (the Agreement). The Agreement contained a forum selection clause that stated,

> This Agreement shall be construed under and in accordance with the laws of the State of Texas and the rights duties and obligations of Client and Attorneys regarding the Attorneys' representation of client and regarding any matter covered by this Agreement shall be governed by the laws of the state of Texas. Subject to the requirements of Section 10 hereof, any controversy between Client and Attorneys or either of them regarding Attorneys' representation of Client or regarding anything covered by this Agreement will be filed in a court of competent jurisdiction in Harris County, Texas.

The firm began an investigation, expended funds on behalf of Cobb, and referred Cobb's case to a Louisiana attorney. Within three weeks of Cobb's signing of the Agreement, the Louisiana attorney filed suit in July 2005 on behalf of Cobb in the United States District Court for the Eastern District of Louisiana. Fourteen days after the lawsuit was filed, Cobb terminated both the firm and the Louisiana attorney, and returned the firm's check to the firm. Cobb told the firm in writing that he had decided to go back to work for the company that had caused his injuries in Louisiana. Three days after firing the firm, Cobb personally settled the claims that were the subject of the Louisiana lawsuit without paying the firm's costs or fees.

The firm filed suit for breach of contract against Cobb in Harris County. Cobb responded with a special appearance that he later amended. Although Cobb acknowledged that he signed the Agreement at the firm's Houston office, he contended the Agreement was made "under circumstances rendering it void and therefore unenforceable as a matter of law." Cobb asserted that the firm's use of "runners to solicit business in Louisiana" was the subject of a disciplinary petition filed by the State Bar of Texas. Cobb was listed as a person with relevant knowledge of that lawsuit. Cobb also claimed when he signed the Agreement he did not understand that the Agreement had a forum selection clause.

The firm responded that Texas had general and specific jurisdiction over Cobb because Cobb traveled Texas to sign the Agreement with the firm, the law firm performed legal work in Texas, and Cobb fired the firm by sending the notice of termination to Texas.

Although the 11th District Court initially granted the special appearance, the special appearance was denied by the 151st District Court when that court granted the firm's motion for new trial.

### Special Appearance

In his second and third issues, Cobb contends that he lacks sufficient minimum contacts with Texas to support the exercise of personal jurisdiction over him and that the forum selection clause cannot be used to obtain jurisdiction over him.

**A. De Novo Review**

■ A legal conclusion concerning the existence of personal jurisdiction is a question of law subject to de novo review. *Am. Type Culture Collection Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002); *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). "[W]e review de novo if the underlying facts are undisputed or otherwise established." *Preussag Aktiengesellschaft v. Coleman,* 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.).

■ The general rule is that an interested witness "does no more than raise a fact issue to be determined by the jury." *Rosenblatt v. Freedom Life Ins. Co. of America,* 240 S.W.3d 315, 321 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990)). Under the exception to this rule, evidence is taken as true as a "matter of law" when the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. *Id.* The exception is "especially true," the court observed, when "the opposing party has the means and opportunity of disproving the testimony," but did not object. *Id.*

■ Stern filed an affidavit describing the Agreement signed by Cobb, but he did not dispute the statements made by Cobb concerning how Cobb was solicited by the law firm and Stern in Louisiana. Under these circumstances, Cobb's affidavit must be taken as true as a matter of law because the firm and Stern did not challenge the facts stated in the affidavit, even though they had the means and opportunity of disproving the testimony. Cobb's affidavit is clear, direct, and positive.

There are no circumstances tending to cast suspicion on Cobb's affidavit. Although the admissions made by Cobb acknowledged that he had read the Agreement before he signed it, he later corrected those admissions to make clear that he did not read the Agreement before he signed it. Therefore, the evidence before the court was free from contradiction and inaccuracies. Even if we determined there was an inconsistency concerning whether Cobb read the Agreement before he signed it, there is no dispute or inconsistency concerning Cobb's statements that Stern and employees from the firm solicited him in Louisiana, which is the sole pertinent issue before us in this appeal. Because Cobb's affidavit must be taken as true as a matter of law, we conduct a de novo review. *See id.*

## B. The Law of Special Appearance

■ A plaintiff bears the initial burden of pleading allegations sufficient to bring a non-resident defendant within the terms of the Texas long-arm statute. *Am. Type Culture Collection,* 83 S.W.3d at 807. "The nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations." *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007). The firm's pleadings asserted jurisdiction over Cobb based on Cobb's traveling to Texas to sign the Agreement, the Agreement's forum selection clause, the firm's legal work done in Texas, and Cobb's letter sent to Texas to terminate the firm. Cobb's response negates each of these allegations.

■■ A court may assert personal jurisdiction over a non-resident defendant if the requirements of the Due Process Clause of the United States Constitution[1]

---

**1.** U.S. Const. amend. XIV, § 1.

and the Texas long-arm statute [2] are both satisfied. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). "Because the Texas long-arm statute reaches 'as far as the federal constitutional requirements of due process will allow,' the statute is satisfied if the exercise of personal jurisdiction comports with federal due process." *Preussag Aktiengesellschaft,* 16 S.W.3d at 113 (quoting *CSR Ltd.,* 925 S.W.2d at 594). We thus examine only whether a Texas court's exercise of jurisdiction over Cobb would comport with the requirements of federal due process. *See CSR, Ltd.,* 925 S.W.2d at 594.

■ "Federal due process requirements are two-fold." *Id.* "First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that it could reasonably anticipate being sued there." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). "Second, if the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of jurisdiction must comport with fair play and substantial justice." *Id.*

■ In deciding whether a defendant has sufficient minimum contacts, "[i]f the nonresident defendant has purposefully availed itself of the privileges and benefits of conducting business in a state, it has sufficient contacts to confer personal jurisdiction." *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). "Random, fortuitous, or attenuated contacts do not suffice." *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183).

To assess whether a non-resident defendant has purposefully availed himself of the privileges and benefits of conducting business in Texas, we examine three elements. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005). First, only the defendant's own actions may constitute purposeful availment. *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). Second, the defendant's acts must be purposeful, and a showing of random, isolated, or fortuitous contacts is insufficient. *Id.* (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). It is the *quality,* rather than the *quantity* of the contacts that is determinative. *Silbaugh,* 126 S.W.3d at 95. Third, a defendant must seek some benefit, advantage, or profit through his purposeful availment. *Holten,* 168 S.W.3d at 785 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ Minimum-contacts analysis is further divided into general jurisdiction and specific personal jurisdiction. *Preussag Aktiengesellschaft,* 16 S.W.3d at 114. General jurisdiction does not require that the cause of action relate directly to the defendant's contacts with the forum. *Preussag Aktiengesellschaft,* 16 S.W.3d at 114 (citing *CSR, Ltd.,* 925 S.W.2d at 595). However, to negate general jurisdiction a defendant must show that its contacts in Texas were not "continuous and systematic." *Id.* To support general jurisdiction, the defendant's forum activities must have been "substantial," which requires stronger evidence of contacts than for specific jurisdiction. *Id.*

■ A court may exercise specific personal jurisdiction over a non-resident defendant if (1) the non-resident purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there

---

**2.** *See* Tex Civ Prac. & Rem.Code Ann. § 17.042   (Vernon 1997).

and (2) the controversy arises out of or is related to the non-resident's contacts with the forum state. *BMC Software*, 83 S.W.3d at 796. An individual's contract with an out-of-state party alone does not automatically establish minimum contacts in the other party's home state. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. Rather, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ... must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. at 2185.

### C. Law Concerning Attorney Solicitation of Clients

Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct states,

(a) A lawyer shall not by in-person contact ... seek professional employment concerning a matter arising out of a particular occurrence or event ... from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. . . .

TEX. DISCIPLINARY R. PROF'L CONDUCT 7.03 (1995), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005).

Rule 5.03 provides,

With respect to a nonlawyer employed or retained by or associated with a lawyer:

. . .

(b) a lawyer shall be subject to discipline for the conduct of such a person that would be a violation of these rules if engaged in by a lawyer if:

(1) the lawyer orders, encourages, or permits the conduct involved. . . .

TEX. DISCIPLINARY R. PROF'L CONDUCT 5.03 (1990), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon 2005).

■■■■ The Texas Government Code, section 82.065, entitled "Contingent Fee Contract for Legal Services," states,

A contingent fee contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this state or the Disciplinary Rules of the State Bar of Texas regarding barratry by attorneys or other persons.

TEX. GOV'T CODE ANN. § 82.065(b) (Vernon 2005). "Barratry is the solicitation of employment to prosecute or defend a claim with intent to obtain a personal benefit." *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex.1994). A client may void a contingent fee contract that violates section 82.065 by expressing his intent to do so before the attorney has fully or substantially performed. *Tillery & Tillery v. Zurich Ins. Co.*, 54 S.W.3d 356, 359 (Tex.App.-Dallas 2001, pet. denied) (citing *Sanes v. Clark*, 25 S.W.3d 800, 805 (Tex. App.-Waco 2000, pet. denied)).

### D. Analysis

■■■■ Although the firm responded to Cobb's special appearance motion, it did not refute any of Cobb's statements that he had no contacts with Texas, other than the single occurrence when the firm's employee transported Cobb to Texas to sign the Agreement with the forum selection clause, which resulted in the legal services provided by the firm. This event fails to establish general jurisdiction over Cobb because there is no evidence of substantial, continuous or systematic contacts with Texas. *See Preussag Aktiengesellschaft*, 16 S.W.3d at 114.

■■■■ This event also fails to establish specific jurisdiction over Cobb. Cobb's un-

disputed affidavit states that the firm's representatives contacted him in Louisiana and Stern flew to Louisiana to meet with Cobb for the purpose of obtaining Cobb as a client. Cobb had no prior relationship with the firm. The firm's actions, as alleged in Cobb's unrefuted affidavit, violated rules 5.03 and 7.03 of the Disciplinary Rules of Professional Conduct. Therefore, the contingent fee contract was voidable by Cobb. *See* TEX. GOV'T CODE ANN. § 82.065(b). Approximately one month after signing the contingent fee contract and two weeks after the Louisiana lawyer filed suit, Cobb sent notice to the firm stating, "Thank you for your help, but I don't need you to be my lawyer. I am returning your check." This was sufficient to void the contingent fee contract because it occurred before the attorney fully or substantially complied. *See Tillery,* 54 S.W.3d at 359; *Sanes,* 25 S.W.3d at 805.

The sole basis the firm alleges to support jurisdiction is the Agreement that formed the attorney-client relationship. But the Agreement was voided by Cobb. Because the primary purpose of the Agreement—a contingent fee agreement for legal services—was voided pursuant to the Government Code, and activity stemming from the void Agreement was the only contact with Texas, there is no evidence to establish specific jurisdiction. *See CSR, Ltd.,* 925 S.W.2d at 594 (stating first requirement of personal jurisdiction is that defendant have "contacts" with state) (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). Moreover, it would violate the public policy of Texas for a court to allow enforcement of an agreement obtained in violation of the disciplinary rules for attorneys. *See In re AIU Ins. Co.,* 148 S.W.3d 109, 115 (Tex.2004) (stating forum selection clause obtained by fraud or overreaching or "contraven[ing] a strong public policy" of selected forum not enforceable).

We hold that the trial court erred by determining that it could exercise specific jurisdiction over Cobb.

We sustain Cobb's second issue.

### Amending a Special Appearance

In his first issue, Cobb asserts he was entitled to cure the defect in his special appearance. In its motion for new trial, the firm contended that Cobb's motion was not sworn and his amended motion was filed too close to the beginning of the hearing to be considered by the trial court.

Rule 120a of the Texas Rules of Civil Procedure provides that a "special appearance shall be made by sworn motion ... and may be amended to cure defects." TEX.R. CIV. P. 120a(1). A special appearance that is unsworn or unverified is defective; however "an amendment that adds a verification cures the special appearance." *Dawson–Austin v. Austin,* 968 S.W.2d 319, 322 (Tex.1998). The amended special appearance may be filed anytime before a general appearance is made. *Id.* Rule 120a also provides that affidavits concerning the special appearance "shall be served at least seven days before the hearing." TEX.R. CIV. P. 120a(3).

Here, Cobb filed an amended special appearance to correct the defect of his timely filed special appearance. The firm does not contend that the amended special appearance is defective. Cobb's amended special appearance cured the defective verification of his original special appearance. *See Dawson–Austin,* 968 S.W.2d at 322. The firm filed a motion for new trial for reconsideration of the special appearance ruling in favor of Cobb. One ground asserted in the motion was the timeliness of the filing of the amended special appearance. At the time the trial court granted a new trial in favor of the firm, the amended special appearance and affidavit had been

on file with the district court for about six weeks, a period far beyond the seven days required by rule. *See* TEX.R. CIV. P. 120a(3). We hold the amended special appearance and affidavit were properly before the trial court.

We sustain Cobb's first issue. Having sustained Cobb's first and second issues, we need not address his third issue concerning the validity of the forum selection clause under Louisiana law.

### Conclusion

We reverse the trial court's order denying Cobb's special appearance and render judgment dismissing the case against Cobb for lack of personal jurisdiction.