**FILED**
IN THE 13TH COURT OF APPEALS

7/20/15

*Cecile Foy Gsanger*

**CLERK**

ACCEPTED
13-15-00042-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/20/2015 6:20:08 PM
CECILE FOY GSANGER
CLERK

## No. 13-15-00042-CV

## In the Thirteenth Court of Appeals
## Corpus Christi, Texas

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

7/20/2015 6:20:08 PM

CECILE FOY GSANGER
Clerk

**Belinda Lopez,**
**Appellant**

**v.**

**Santos Maldonado,**
**Appellee**

---

**On Appeal from Trial Court Case No. F-2820-10-E**
**275th District Court of Hidalgo County, Texas**
**Honorable Juan R. Partida**

---

## APPELLANT'S BRIEF

---

R. W. Armstrong
State Bar No. 01323500
The Armstrong Firm
2600 Old Alice Road, Suite A
Brownsville, Texas 78521
Telephone: (956) 546-5556
Telecopier: (956) 546-0470

**COUNSEL FOR APPELLANT BELINDA LOPEZ**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant**

Belinda Lopez

R. W. Armstrong
State Bar No. 01323500
The Armstrong Firm
2600 Old Alice Road, Suite A
Brownsville, Texas 78521
Telephone: (956) 546-5556
Telecopier: (956) 546-0470
office@armstrong-firm.com

Special Counsel to the Armstrong Firm:
Tracia Y. Lee
State Bar No. 24013021
Tracia Y. Lee, P.L.L.C.
P.O. Box 171022
Austin, Texas 78717
Telephone: (512) 814-6167
Facsimile:   (512) 271-6806
tlee@tleelaw.com

**Appellee**

Santos Maldonado

Reynaldo L. Diaz, Jr.
Law Offices Of Reynaldo L. Diaz, Jr.
1615 Broadway
San Antonio, Texas 78215

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL............................................i

TABLE OF CONTENTS ................................................ii, iii

INDEX OF AUTHORITIES ........................................... iv, v

STATEMENT REGARDING CITATIONS TO THE RECORD………..v

STATEMENT OF THE CASE.........................................1

ISSUE PRESENTED.................................................2

STATEMENT OF FACTS............................................2

SUMMARY OF THE ARGUMENT ...................................7

ARGUMENT.......................................................7

I.      Review standard and burden of proof standard .......................8

        A.      *This Court reviews the trial court's summary judgment de novo* ...............................................................8

        B.      *Maldonado had the burden of proof to show his entitlement to attorney's fees and expenses*.....................8

II.     Maldonado is not entitled to summary judgment because he failed to establish his entitlement to attorney's fees and his contract is unenforceable as a matter of law ...........................9

        A.      *Maldonado did not submit any summary judgment evidence to support his motion* ........................................9

B.      *Maldonado is not entitled to 20% of Ms. Lopez's recovery because his own contract prohibits such a contingency fee* ....................................................10

C.      *Maldonado is not entitled to reasonable attorney's fees because he made no attempt to establish that his fees for representing Ms. Lopez were reasonable* ..............................................11

D.      *Maldonado did not establish that his alleged expenses for representing Ms. Lopez were necessary or reasonable* ...............................................14

E.      *Maldonado is not entitled to a contingency fee because such fee is unconscionable* .........................16

F.      *Because Maldonado's contingency fee contract is unconscionable and against public policy, it is unenforceable as a matter of law* ...................16

PRAYER.......................................................................................19

CERTIFICATE OF COMPLIANCE ..................................................21

CERTIFICATE OF SERVICE .........................................................21

APPENDIX ...................................................................................22

# INDEX OF AUTHORITIES

**Cases**

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
945 S.W.2d 812 (Tex. 1997) ............................................................12

*Barrow v. Jack's Catfish Inn*, 641 S.W.2d 624
(Tex. App.—Corpus Christi 1982, no writ)....................................9, 10

*Bullock v. Foster Cathead Co.*, 631 S.W.2d 208
(Tex. App.—Corpus Christi 1982, no writ……………………………..12

*Cruse v. O'Quinn,* 273 S.W.3d 766
(Tex. App.—Houston [14th Dist.] 2008, pet. denied)........................18

*Davis Law Firm v. Bates*, 2014 WL 585855
(Tex. App.—Corpus Christi 2014, no pet.) ......................16, 17, 18, 19

*Eggert v. Am. Standard Life Ins. Co.*, 404 S.W.2d 99
(Tex. Civ. App.—Corpus Christi 1966, no writ) ...............................10

*Great American Reserve Insurance Co. v. Britton*,
406 S.W.2d 901 (Tex.1966)……………………………………………..12, 13

*Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540
(Tex. 1971).......................................................................................10

*In re Plaza*, 363 B.R. 517, 521-522 (Bankr. S.D. Tex. 2007) ............18

*Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*,
904 S.W.2d 656 (Tex. 1995) ............................................................10

*MMP, Ltd. v. Jones*, 710 S.W.2d 59 (Tex. 1986) ...............................8

*Ross v. Union Carbide Corp.*, 296 S.W.3d 206
(Tex. App.—Houston [14th Dist.] 2009, pet. denied)........................19

*Ryland Group, Inc. v. Hood*, 924 S.W.2d 120 (Tex. 1996)................14

*Sanes v. Clark,* 25 S.W.3d 800
(Tex. App.—Waco 2000, pet. denied).............................................18

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005) ........8

**Rules**

Texas Disciplinary Rule of Professional Conduct 1.02(a)(2).......17, 18

Texas Disciplinary Rule of Professional Conduct 1.04................11, 16

## STATEMENT REGARDING CITATIONS TO THE RECORD

Appellant refers to the clerk's record as "CR ____" and the supplemental clerk's record, submitted by the trial court to this Court on July 20, 2015, as "SCR ____".

## STATEMENT OF THE CASE

Belinda Lopez filed for divorce from Erasmo Lopez on November 3, 2010. CR 9-19. On July 21, 2011, Ms. Lopez retained Intervenor Santos Maldonado, Jr. to represent her as her legal counsel during the divorce proceedings. CR 270-273; 288. She signed a contingency fee agreement with Maldonado. CR 270-273. When she discovered that Maldonado was negligent in performing his legal responsibilities to her by failing to provide information necessary for her to evaluate her case, she terminated their contract. CR 288-291.

Despite the breach of his contract and duty to her, Maldonado intervened in the divorce proceeding, asserting a Plea in Intervention seeking to collect his attorney's fees and legal expenses he claims were incurred while representing Ms. Lopez. CR 58-60. Ms. Lopez responded by asserting a counterclaim against him for negligence and legal malpractice. CR 61-62.

Maldonado moved for summary judgment to recover his attorney's fees. CR 266-267. Ms. Lopez moved for summary judgment to avoid paying his attorney's fees under their contract due to his negligence and legal malpractice. CR 294-302. The trial court

1

granted Maldonado's motion (CR 325-326) but never ruled on Ms. Lopez's motion.

The order granting Maldonado's summary judgment motion orders Ms. Lopez to reimburse him $19,431.82 for expenses and to pay him the "owed contractual amount of 20% of her recovery received…" See CR 325.

Ms. Lopez seeks review of the summary judgment granted to Maldonado.

## ISSUE PRESENTED

Maldonado is not entitled to summary judgment on his attorney's fees or expenses because he failed to establish as a matter of law that he is entitled to recover attorney's fees or expenses from Ms. Lopez.

## STATEMENT OF FACTS

On November 3, 2010, Ms. Lopez filed her Original Petition for Divorce against her husband, Erasmo Lopez. CR 9-19.

On July 21, 2011, Ms. Lopez was referred to Santos Maldonado as an attorney who has family law experience and who could represent me in my divorce. CR 288.[1] She retained him to

_____

[1] Maldonado did not object to any statements Ms. Lopez made in her affidavit.

2

represent her in the divorce proceedings. *Id.* Maldonado drafted the contingency fee contract, which he entitled "Contingent Contract of Employment," and both parties signed it. *Id.*; CR 270-273.

Maldonado advised Ms. Lopez to accept a settlement in the divorce proceeding, and the Lopezes' respective attorneys dictated a purported agreement before a court reporter when the court was not in session. CR 288-291. However, Ms. Lopez later repudiated the agreement after discovering that Maldonado had failed to provide information necessary for her to evaluate her case and that he had advised her to accept a settlement that was not fair or proper to her. *Id.*

Prior to the court meeting, Ms. Lopez spoke with Maldonado about the valuations of the community property and specifically the house and furniture. *Id.* Even though the furniture had little value, Maldonado directed and advised her to accept the valuation of $150,000.00. *Id.* He also directed and advised her to accept the valuation of $400,000.00 for the community property house, instead of the Hidalgo County Appraised value of $219,000.00. Mr. Lopez wanted to value it at $400,000.00, and Maldonado directed and advised her to accept that value. *Id.* Although Ms. Lopez was the

3

client, Maldonado always overruled her. Maldonado had no concern for Ms. Lopez's opinions. *Id.*

Maldonado allowed Mr. Lopez to receive substantially most of the assets and certainly all the income earning assets. *Id.* After Ms. Lopez terminated Attorney Maldonado's employment, she discovered that the promissory note Mr. Lopez gave to her as part of her distribution was totally unsecured. *Id.* None of the assets awarded to Mr. Lopez were subject to a lien for performance of the promissory note in the principle amount of $365,000.00. *Id.* Ms. Lopez was shocked when she discovered that there was no security whatsoever, and that the promissory notes was based solely on Mr. Lopez's naked promise that he would pay. *Id.*

Ms. Lopez also discovered that Maldonado had written in one of the proposed decrees that the payments from the promissory note mentioned above were to be paid directly to Maldonado. *Id.* Maldonado never discussed such self-dealing with Ms. Lopez at anytime, and she would not have agreed to this payment arrangement. *Id.*

Additionally, after Ms. Lopez terminated Maldonado, she was advised that she would have received a larger share of the

4

community property if the court found fault against Mr. Lopez. *Id.* However, Maldonado never informed Ms. Lopez about this law. *Id.* Either he did not understand the law or chose not to inform her of this issue. *Id.* Ms. Lopez told Maldonado that Mr. Lopez had maintained several mistresses during their marriage and that she had personally confronted Mr. Lopez leaving a hotel in Brownsville, Texas with his girlfriend Joana Benavides, one week before she filed for divorce. *Id.* Ms. Lopez believed that Mr. Lopez was a serial adulterer, having one girl friend after another during our marriage. *Id.* However, Maldonado did not use this information to help Ms. Lopez obtain a larger proportion of the community assets. *Id.* Ms. Lopez did not know this law until after she had terminated Maldonado's services. *Id.*

Because Ms. Lopez believes that Maldonado has harmed her divorce case due to his incompetency, self-dealing, and refusal to listen to her, even though she was the client, Ms. Lopez asserted a claim of legal malpractice against Maldonado. *Id.*

The trial court ultimately entered a judgment based on the terms that Maldonado had recited to the court reporter at the aforementioned court meeting, which terms Ms. Lopez had

5

repudiated. CR 164-202. Ms. Lopez is appealing that divorce decree. CR 292-293.

The contract that Attorney Maldonado is attempting to enforce does not grant him the absolute right to recover a 20% contingency fee. CR 270-273.

The "Contingent Contract of Employment" executed by the parties provides the following:

- Since Ms. Lopez terminated the contract, Maldonado is entitled to only "a reasonable fee pursuant to the factors and guidelines approved by the Supreme Court of Texas and in the Code of Professional Responsibility." CR 271.

- Ms. Lopez cannot settle her case without Maldonado's consent:

  *Necessity for Attorney's Consent to Settlement*

  Client will make no settlement of the claim herein, or accept any sum as reimbursement for any bodily injuries or expenses, without the Attorney's consent. CR 272.

- Ms. Lopez pays only reasonable and necessary expenses: "[A]ll costs, *necessary* disbursements, investigative fees, *reasonable* personal expenses, as well as *necessary* expenses to prepare

6

the case for settlement or trial… are to be paid by Client." CR 270.

At no point did Maldonado show Ms. Lopez any documentation that he spent $24,431.82 preparing her case for settlement or trial. CR 288-291. At no point did he show Ms. Lopez invoices, receipts, or other documentation substantiating his alleged expenses for her case or benefit. CR 288-291.

## SUMMARY OF THE ARGUMENT

Maldonado is not entitled to summary judgment on his attorney's fees or expenses because (1) since Ms. Lopez terminated his services, his own contract prohibits him from recovering a 20% contingency fee; (2) since Ms. Lopez terminated his services, his own contract entitles him to only reasonable attorney's fees, and he did not establish that his attorney's fees are reasonable; and (3) his contingency fee contract is not enforceable under Texas law. Furthermore, Maldonado even admits in a pleading that his entitlement to attorney's fees is a fact issue.

## ARGUMENT

### I. Review standard and burden of proof standard

#### A. This Court reviews the trial court's summary judgment de novo

The appeals court reviews the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, the appeals court takes as true all evidence favorable to the nonmovant, and indulges every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

#### B. Maldonado had the burden of proof to show his entitlement to attorney's fees and expenses

Because Maldonado was seeking affirmative relief, he had the burden of proof to establish he was entitled to relief as a matter of law. To be entitled to summary judgment on his own claim for affirmative relief, a movant must conclusively prove all essential elements of his claim. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). The movant has the burden to show that there are no genuine issues of material fact and that movant is entitled to judgment as a matter of law. *Id.* Evidence favorable to the nonmovant will be taken

as true and every reasonable inference must be indulged in nonmovant, and any doubts resolved in nonmovant's favor. *Id.*

## II. Maldonado is not entitled to summary judgment because he failed to establish his entitlement to attorney's fees and his contract is unenforceable as a matter of law

On July 28, 2014, Maldonado filed his one-page motion for summary judgment to recover attorney's fee. CR 266-274. In his one-page motion, Maldonado claims he is entitled to 20% of Ms. Lopez's recovery in the divorce proceedings and that he incurred $24,431.82[2] in expenses for "developing the case." CR 266. He attached the parties' contingency fee contract (CR 270-273) and a document entitled "Belinda Lopez' Case Expenses" (CR 274) to his motion. Maldonado did not authenticate either exhibit. Instead, he verified his motion.

### A. Maldonado did not submit any summary judgment to support his motion

Maldonado submitted no evidence at all to support his summary judgment motion, since his verified summary judgment motion is not summary judgment evidence. A motion for summary judgment is a pleading. *Barrow v. Jack's Catfish Inn*, 641 S.W.2d

---

[2] Ms. Lopez paid Maldonado a $5,000.00 retainer.

624, 625 (Tex. App.—Corpus Christi 1982, no writ). Pleadings, such as factual statements in summary judgment motions, do not constitute competent summary judgment evidence, even if sworn or verified. *Id.*; *Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540, 541 (Tex. 1971).

Because Maldonado failed to submit summary judgment evidence to support his motion, he does not even come close to meeting his burden of proof to show his entitlement to attorney's fees or expenses.

**B.** **Maldonado is not entitled to 20% of Ms. Lopez's recovery because his own contract prohibits such a contingency fee**

Because Ms. Lopez terminated Maldonado, he cannot recover a 20% contingency fee under their contract.

It is the function of the court to construe and enforce the contract as it is written where the terms of the contract are plain and unambiguous. *Eggert v. Am. Standard Life Ins. Co.*, 404 S.W.2d 99, 104 (Tex. Civ. App.—Corpus Christi 1966, no writ) (citation omitted). The "Contingent Contract of Employment" plainly and unambiguously provides that if Maldonado withdraws or Ms. Lopez terminates the

10

agreement, he "shall be entitled to a reasonable fee pursuant to the factors and guidelines approved by the Supreme Court of Texas and in the Code of Professional Responsibility." CR 271. There is no dispute that Ms. Lopez terminated their contract. Thus, even under the clear, plain, and unambiguous terms of Maldonado's own agreement that he drafted, he is not entitled to recover the full contracted amount of 20% of Ms. Lopez's recovery.

Thus, the trial court's summary judgment ordering Ms. Lopez to pay Maldonado the "owed contractual amount of 20% of her recovery received…" (*see* CR 325) cannot possibly stand.

### C. Maldonado is not entitled to reasonable attorney's fees because he made no attempt to establish that his fees for representing Ms. Lopez were reasonable

Because Ms. Lopez terminated the agreement, Maldonado's contract permits him to recover only "a reasonable fee pursuant to the factors and guidelines approved by the Supreme Court of Texas and in the Code of Professional Responsibility," (CR 271), the fact finder must consider these factors in determining the reasonableness of Maldonado's fee, as set out by the Supreme Court of Texas, citing Texas Disciplinary Rule of Professional Conduct 1.04:

11

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

Also, the reasonableness of attorney's fees is a question of fact and must be supported by competent evidence. *Bullock v. Foster Cathead Co.*, 631 S.W.2d 208, 212 (Tex. App.—Corpus Christi 1982, no writ) (citing *Great American Reserve Insurance Co. v. Britton*, 406 S.W.2d 901, 907 (Tex.1966)). A court does not have authority to adjudicate the reasonableness of attorney's fees on judicial knowledge without the benefit of evidence. *Bullock*, 631 S.W.2d at

212 (citing *Great American Reserve Insurance Co.*, 406 S.W.2d at 907).

Here, because Ms. Lopez terminated the agreement, Maldonado must convince a fact finder that his fees are reasonable using the *Arthur Andersen* factors, in order to recover his fees. However, Maldonado made no attempt to show that his fees were reasonable.

Maldonado proffered no testimony about his fees with his motion for summary judgment. *See* CR 266-274. Maldonado proffered no testimony about his fees with his untimely reply to Ms. Lopez's response to his motion for summary judgment. *See* SCR 31-35. (Maldonado filed his reply the day before the summary judgment hearing, so anything filed with his reply is untimely and cannot be considered by the Court.)

In a document entitled "Billing Records Affidavit Pertaining to Belinda Lopez" that Maldonado attached to his untimely reply to Ms. Lopez's response to his motion for summary judgment, Maldonado boldly states "The service I provided was and the amount that I charged for the service was reasonable at the time and place that the service was provided" with nothing to support his statement. *See*

13

SCR 35. Such a conclusory statement, with supporting facts, is not credible and is not proper summary judgment evidence. *See e.g. Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (citing Tex.R. Civ. P. 166a(c)).

Maldonado even admits that his entitlement to attorney's fees and expenses is a fact issue. In his Response to Ms. Lopez's Motion for No Evidence Motion for Summary Judgment, he states that "attached hereto… is an appendix containing affidavits, official court transcripts, and other documents setting forth summary judgment proof of the existence of a material fact concerning entitled[sic] of attorney fees and expenses pursuant to valid contract between Santos Maldonado and Belinda Lopez." *See* CR 427.

Because Maldonado failed to show that his fees were reasonable, and he even admits that there is a genuine issue of material fact regarding his entitlement to attorney's fees, he is not entitled to summary judgment awarding him attorney's fees.

### D. Maldonado did not establish that his alleged expenses for representing Ms. Lopez were necessary or reasonable

Because Maldonado's contract expressly provides that "[a]ll costs, *necessary* disbursements, investigative fees, *reasonable*

14

personal expenses, as well as _necessary_ expenses to prepare the case for settlement or trial… are to be paid by Client" (*See* CR 270) (emphasis added), and he failed to proffer evidence to establish his alleged expenses were reasonable and necessary, he is not entitled to recover his such expenses.

To demonstrate his alleged expenses, Maldonado relies on a document entitled "Belinda Lopez' Case Expenses." However, the "Belinda Lopez' Case Expenses" document contains inadmissible hearsay, and inadmissible, unsubstantiated, and conclusory statements. He is not entitled to recover his expenses simply because he says so; he must proffer competent, admissible evidence to show that his expenses are reasonable and necessary. However, Maldonado made no attempt to show that any of the expenses listed in the "Belinda Lopez' Case Expenses" document are reasonable or necessary. The document does not even include enough description for each fee item to allow a fact-finder or Ms. Lopez to evaluate whether a particular fee is reasonable or necessary.

Because no competent evidence supports the necessity or reasonableness of the expenses Maldonado claims he incurred for

representing Ms. Lopez, he is not entitled to recover those alleged expenses.

**E. Maldonado is not entitled to a contingency fee because such fee is unconscionable**

Additionally, Maldonado cannot recover a 20% contingency fee because his incompetent representation of Ms. Lopez makes such a fee unconscionable. "A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." *Davis Law Firm v. Bates*, 2014 WL 585855, *4 (Tex. App.—Corpus Christi 2014, no pet.) (citing Tex. Disciplinary R. Prof'l Conduct 1.04(a)). Here, because the evidence shows that Maldonado did not competently represent Ms. Lopez, no competent lawyer could form a reasonable belief that Maldonado is entitled to 20% of Ms. Lopez's discovery.

**F. Because Maldonado's contingency fee contract is unconscionable and against public policy, it is unenforceable as a matter of law**

Furthermore, the "Contingent Contract of Employment" is void because it has a clause prohibiting settlement without Maldonado's consent, in violation of Texas Disciplinary Rule of Professional

16

Conduct 1.02(a)(2). Specifically, the "Contingent Contract of Employment" states:

*Necessity for Attorney's Consent to Settlement*

> Client will make no settlement of the claim herein, or accept any sum as reimbursement for any bodily injuries or expenses, without the Attorney's consent.

CR 272.

A provision forbidding Ms. Lopez to settle her claim without Maldonado's consent is unenforceable. The parties' contract in this case is similar to the one in *Davis Law Firm v. Bates*, 2014 WL 585855 (Tex. App.—Corpus Christi 2014, no pet.), where this Court concluded that a client can void a contingency fee contract that requires attorney consent to settle a claim. This Court acknowledged that Texas Disciplinary Rule of Professional Conduct 1.02(a)(2) requires an attorney to "abide by a client's decision" regarding whether to accept a settlement offer and that Comment 5 following the rule provides, in pertinent part: "An agreement concerning the scope of representation must accord with the Disciplinary Rules of Professional Conduct and other law. Thus, the client may not be asked ... to surrender ... the right to settle or continue litigation that the lawyer might wish to handle differently." *Id.* at 3 (also citing *In re*

*Plaza*, 363 B.R. 517, 521-522 (Bankr. S.D. Tex. 2007) (determining that "clauses in a contract between attorney and client which prohibit a settlement by the client without his attorney's consent are generally held to be unenforceable as against public policy") and *Sanes v. Clark,* 25 S.W.3d 800, 805 (Tex.App.—Waco 2000, pet. denied) (determining that contingent fee contract authorizing attorney to settle clients' claims without consultation with clients was voidable by clients because it violated rule 1.02(a)(2)).

This Court concluded that a provision stating "neither Client nor Attorney will make a settlement of the claim herein or accept any sum without consent of the other...." violates rule 1.02(a)(2) and is unenforceable as against public policy. *Davis Law Firm*, 2014 WL 585855 at *3 (also citing *Cruse v. O'Quinn,* 273 S.W.3d 766, 775 (Tex.App.—Houston [14th Dist.] 2008, pet. denied) (holding that "a court may deem [the Disciplinary Rules] to be an expression of public policy, so that a contract violating them is unenforceable as against public policy")). This Court concluded in *Davis Law Firm* that the attorney was not entitled to collect a contingency fee. *Davis Law Firm*, 2014 WL 585855 at *3.

This Court is bound by its holding in *Davis Law Firm*. Absent a decision from a higher court or the same court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court. *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 221 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

## **PRAYER**

Because Maldonado did not establish as a matter of law that he is entitled to recover attorney's fees or expenses in the divorce proceeding, and his contingency fee contract is not enforceable under Texas law, he is not entitled to summary judgment. Thus, this Court must reverse the summary judgment.

RESPECTFULLY SUBMITTED,

**THE ARMSTRONG FIRM**
2600 Old Alice Road, Suite A
Brownsville, Texas 78521
Telephone: (956) 546-5556
Telecopier: (956) 546-0470


  /s/  R. W. Armstrong
R. W. Armstrong
State bar No. 01323500

ATTORNEYS FOR APPELLANT
BELINDA LOPEZ

SPECIAL COUNSEL TO THE
ARMSTRONG FIRM:
TRACIA Y. LEE, P.L.L.C.
Tracia Y. Lee
State Bar No. 24013021
P.O. Box 171022
Austin, Texas 78717
Telephone: (512) 814-6167
Facsimile:   (512) 271-6806

## CERTIFICATE OF COMPLIANCE

I certify that I drafted Appellant's Brief using Microsoft Word for Mac 2011 using Arial 14-point font for the text and 12-point font for footnotes and that the Brief contains 3425 words.

<u>　/s/　Tracia Y. Lee　　　　</u>
Tracia Y. Lee

## CERTIFICATE OF SERVICE

I certify that on this 20th day of July, 2015, a true and correct copy of Appellant's Brief was served on the following counsel of record via facsimile, in accordance with the Texas Rules of Civil Procedure:

<u>　/s/　Tracia Y. Lee　　　　</u>
Tracia Y. Lee

**No. 13-15-00042-CV**

**In the Thirteenth Court of Appeals
Corpus Christi, Texas**

---

**Belinda Lopez,
Appellant**

**v.**

**Santos Maldonado,
Appellee**

---

**APPELLANT'S APPENDIX**

---

LIST OF DOCUMENTS

ITEM 1    *Davis Law Firm v. Bates*, 2014 WL 585855
(Tex. App.—Corpus Christi 2014, no pet.)

ITEM 2    Texas Disciplinary Rule of Professional Conduct
1.02(a)(2)

ITEM 3    Texas Disciplinary Rule of Professional Conduct
1.04

**No. 13-15-00042-CV**

**Belinda Lopez,
Appellant**

**v.**

**Santos Maldonado,
Appellee**


ITEM 1

*Davis Law Firm v. Bates*, 2014 WL 585855
(Tex. App.—Corpus Christi 2014, no pet.)

2014 WL 585855
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
Court of Appeals of Texas,
Corpus Christi–Edinburg.

The DAVIS LAW FIRM, Appellant,
v.
James BATES and Consumers County
Mutual Insurance Company, Appellees.

No. 13–13–00209–CV. | Feb. 13, 2014.

**Synopsis**
**Background:** Law firm brought action against former client and her insurer seeking to contingent fee payment. The County Court at Law, Cameron County, granted defendants summary judgment. Law firm appealed.

**Holdings:** The Court of Appeals, Garza, J., held that:

[1] contingency fee contract that required client to obtain attorney's consent to settle was unenforceable as against public policy, and

[2] assuming unconscionable provision in contract was severable, law firm was not entitled to enforcement of the agreement because charging a $70,000 fee for no legal services performed was an unconscionable fee.

Affirmed.

West Headnotes (2)

[1] **Attorney and Client**
 👉 Requisites and Validity of Contract
Contingency fee contract that required client to obtain attorney's consent to settle violated rule of professional conduct requiring an attorney to abide by a client's decision, and thus, contract

was unenforceable as against public policy. State Bar Rules, V.T.C.A., Government Code Title 2, Subtitle G App. A, Art. 10, § 9, Rules of Prof.Conduct, Rule 1.02(a)(2).

Cases that cite this headnote

[2] **Attorney and Client**
 👉 Requisites and Validity of Contract
Assuming that the provision in contingency fee contract prohibiting settlement without attorney's consent was severable, law firm was not entitled to enforcement of the agreement because charging a $70,000 fee for no legal services performed was an unconscionable fee; law firm did not identify any legal services it performed on client's behalf in the 24 hours or less that it represented her, and client was interviewed by a firm employee and did not at any time meet or consult with an attorney from the firm. State Bar Rules, V.T.C.A., Government Code Title 2, Subtitle G App. A, Art. 10, § 9, Rules of Prof.Conduct, Rule 1.04(a).

2 Cases that cite this headnote

On appeal from the County Court at Law No. 2 of Cameron County, Texas.

**Attorneys and Law Firms**

Jeff Small, Mark Anthony Acuna, for the Davis Law Firm.

Roger W. Hughes, Tom Lockhart, for James Bates and Consumers County Mutual Insurance Company.

Before Justices RODRIGUEZ, GARZA, and PERKES.

**MEMORANDUM OPINION**

Memorandum Opinion by Justice GARZA.

**\*1** By several issues, appellant, the Davis Law Firm ("Davis"), contends the trial court erred in granting summary judgment in favor of appellees, James Bates and Consumers County Mutual Insurance Company ("Consumers"), and in denying Davis's motion for summary judgment. We affirm.

## I. BACKGROUND

On January 15, 2008, Marta Tapia and Bates were involved in an automobile accident in Brownsville, Texas. Tapia sued Bates for injuries sustained in the accident. Consumers defended Bates and, in May 2009, paid $200,000.00 to Tapia in settlement of her claims against Bates.

Either the same day as the accident or the following day, Tapia visited Davis's Brownsville office. Tapia spoke with a Davis staff employee and signed a contingency fee contract. The agreement provided for Davis to receive a thirty-five percent (35%) contingency fee of any amount Tapia recovered before filing suit. After leaving Davis's office, Tapia felt uncomfortable and that she had not been treated with consideration. A family friend called to check on her and recommended that she retain Javier Villarreal to represent her. The following day, Tapia visited Villarreal's office and asked that he represent her. Tapia told Villarreal that she had signed a contingency fee agreement with Davis. Villarreal prepared a letter for her signature advising Davis that she did not want to retain the firm's services. The letter was faxed to Davis's office that day. [1]

In February 2008, Davis advised Bates's insurer, Travelers Insurance, [2] that Tapia had released Davis from representing her, but that Davis retained its interest in the claim. The letter requested that Davis be included in any settlement check regarding Tapia's claims. In December 2009, after the settlement, Davis sent a demand letter to Travelers demanding payment of its fee in the amount of 33.3 percent of the settlement amount.

Davis sued Bates and Consumers for interference with a contract, conversion, and enforcement of its fee agreement. [3] Bates and Consumers each filed a traditional motion for summary judgment, asserting that they were entitled to summary judgment on grounds that: (1) the contingency fee contract was unconscionable as a matter of law and unenforceable because it required Davis's consent to any settlement in violation of Texas Disciplinary Rule of Professional Conduct 1.02(a)(2), *see* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(a)(2), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9), and therefore, that the agreement was voidable pursuant to government code section 82.065(b),

*see* Tex. Gov't Code Ann. § 82.065(b) (West 2013); and (2) Davis's attempt to collect a $70,000 fee for no useful services to Tapia was an attempt to collect an unconscionable fee. Consumers and Bates also asserted that Davis's tortious interference and conversion claims failed as a matter of law because: (1) Tapia properly canceled the fee agreement before the alleged interference; and (2) Davis had no right to possess the funds at the time of the alleged conversion. [4]

**\*2** Consumers attached the following evidence to its traditional motion for summary judgment: (1) excerpts from Tapia's deposition testimony; (2) Davis's responses to Consumers's discovery requests; and (3) an affidavit and report prepared by Frank Costilla, a Brownsville attorney, regarding the unconscionability of Davis's claim to the $70,000 fee. [5]

Davis also filed a traditional motion for summary judgment asserting that: (1) Tapia lacked good cause to discharge Davis; (2) Consumers was liable to Davis for the amount of the fee because it had notice of Davis's interest in the $70,000 fee; and (3) even if a provision of the contingency fee contract was unconscionable, the trial court erred in failing to eliminate the unconscionable provision and to enforce the remaining provisions of the contract. Davis attached the following summary judgment evidence: (1) Tapia's deposition testimony; (2) the contingent fee agreement; (3) the February 2008 letter from Davis to Consumers; (4) the deposition of William Edwards [6]; (5) a copy of the settlement agreement; and (6) a copy of the settlement check.

Consumers and Bates filed objections to Edwards's deposition testimony and affidavit on grounds that Edwards offered opinions on questions of law, failed to employ the correct legal standard, and that his opinions were speculative and conclusory. The trial court overruled Davis's objections to Consumers's and Bates's evidence, denied Davis's motion, sustained Consumers' and Bates's objections to Davis's evidence, and granted Consumers's and Bates's motions without stating the basis for its ruling.

## II. STANDARD OF REVIEW
## AND APPLICABLE LAW

In a summary judgment case, the movant must show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R.

CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003). The movant has the burden of proof. *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). A defendant who conclusively negates at least one essential element of the plaintiff's cause of action, or who conclusively establishes all of the elements of an affirmative defense, is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex.2010). The burden to raise a fact issue shifts to the non-movant only after the movant has established that it is entitled to summary judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex.1999); *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989).

We review a traditional motion for summary judgment de novo. *Frost Nat'l Bank,* 315 S.W.3d at 508. To determine if the non-movant raised a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009).

**\*3** When both sides move for summary judgment, and the trial court grants one and denies the other, we review both sides' evidence and determine all questions presented. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000); *Lumbreras v. Rocha,* No. 13–10–00459–CV, 2012 WL 29215, at \*1 (Tex.App.-Corpus Christi Jan.5, 2012, no pet.) (mem.op.). The reviewing court must then render the judgment that the trial court should have rendered. *See FM Props. Operating Co.,* 22 S.W.3d at 872. "When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *Id.*

## III. DISCUSSION

Davis characterizes its issues as follows: (1) the trial court erred by granting summary judgment in favor of Bates and Consumers and by denying summary judgment in Davis's favor; (2) Consumers had no standing to challenge the validity of the contingency fee contract;[7] (3) Davis was entitled to collect its contingency fee because Tapia terminated the agreement without good cause and Consumers knew of Davis's fee interest; (4) Consumers failed to prove that the contingency fee contract was unconscionable at the time of its formation; and (5) even if the clause requiring Davis's consent to settlement was invalid, the trial court erred in failing to sever the invalid clause and in failing to enforce the remainder of the contract.

### A. The Summary Judgment Motions

 **[1]** Bates and Consumers moved for summary judgment on the ground that the contingency fee agreement was voidable by Tapia because it included a clause prohibiting settlement without Davis's consent in violation of Texas Disciplinary Rule of Professional Conduct 1.02(a)(2). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(a)(2). Rule 1.02(a)(2) requires an attorney to "abide by a client's decision" regarding whether to accept a settlement offer. *Id.* Comment 5 following the rule provides, in pertinent part: "An agreement concerning the scope of representation must accord with the Disciplinary Rules of Professional Conduct and other law. Thus, the client may not be asked ... to surrender ... the right to settle or continue litigation that the lawyer might wish to handle differently." *Id.* cmt. 5; *see In re Plaza,* 363 B.R. 517, 521–22 (2007) ("Clauses in a contract between attorney and client which prohibit a settlement by the client without his attorney's consent are generally held to be unenforceable as against public policy.") (quoting *Lewis v. S.S. Baume,* 534 F.2d 1115, 1122 (5th Cir.1976)); *Sanes v. Clark,* 25 S.W.3d 800, 805 (Tex.App.-Waco 2000, pet. denied) (holding that contingent fee contract authorizing attorney to settle clients' claims without consultation with clients was voidable by clients because it violated rule 1.02(a)(2)). Here, the contingency fee contract required Tapia to obtain Davis's consent to settle ("Neither Client nor Attorney will make a settlement of the claim herein or accept any sum without consent of the other...."). We conclude that the provision violates rule 1.02(a)(2) and is unenforceable as against public policy. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(a)(2) cmt. 5; *In re Plaza,* 363 B.R. at 521–22; *Sanes,* 25 S.W.3d at 805; *see also Cruse v. O'Quinn,* 273 S.W.3d 766, 775 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (holding that "a court may deem [the Disciplinary Rules] to be an expression of public policy, so that a contract violating them is unenforceable as against public policy"). We hold that the trial court did not err in granting summary judgment in favor of Bates and Consumers on this basis.

 **\*4** In its motion, Davis argued that it was entitled to summary judgment because Consumers had notice of Davis's claim to the 35% contingency fee, but Consumers nonetheless

failed to protect the firm's interest. Davis argues that Consumers is therefore liable for the $70,000 fee. Davis also argues that in determining whether a 35% fee is unconscionable, we should look to the circumstances at the time the parties executed the agreement, "rather than using hindsight to see what work was actually done on the case."

We are unpersuaded by Davis's arguments. We have already determined that because the contingent fee agreement prohibited settlement without Davis's consent, it was unenforceable as against public policy. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02(a)(2) cmt. 5; *In re Plaza,* 363 B.R. at 521–22; *Sanes,* 25 S.W.3d at 805. Moreover, Tapia properly terminated the agreement less than twenty-four hours after she signed the agreement. It is undisputed that Tapia terminated the agreement before she met or consulted with any attorney at the Davis firm. Davis has not identified any legal work that it performed on Tapia's behalf. "Public policy strongly favors a client's freedom to employ a lawyer of his choosing and, except in some instances where counsel is appointed, to discharge the lawyer during the representation for any reason or no reason at all." *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 562 (Tex.2006); *see* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15 cmt. 4 ("A client has the power to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services...."). Regardless, because the trial court could have properly determined that the contingency fee contract was unenforceable as against public policy, it did not err in denying Davis's motion for summary judgment. We overrule Davis's first issue.

By its second issue, Davis contends that neither Bates nor Consumers had standing to step into Tapia's shoes and challenge the validity of her contingency fee contract with Davis. We agree with Consumers and Bates that Davis's standing argument is irrelevant and without merit. Davis is only entitled to its 35% contingency fee if the contract is enforceable, and we have determined that it was unenforceable as against public policy. We overrule Davis's second issue.

By its third issue, Davis contends it was entitled to collect its contingency fee because Tapia terminated her agreement with Davis without good cause. By its fourth issue, it contends that Consumers has not shown that the 35% contingency fee was

unconscionable at the time Tapia signed the agreement. We have already determined that the agreement is unenforceable as against public policy and that Davis was therefore not entitled to the fee. We overrule Davis's third and fourth issues as moot.

## B. Severability of Unconscionable Provision

**[2]** By its fifth issue, Davis argues that even if the provision prohibiting settlement without its consent is invalid, the provision is severable and the remainder of the agreement is enforceable. Davis cites *Hoover Slovacek* in support of the principle that if a term within a contract is unconscionable at the time the contract is made, a court may enforce the remainder of the contract or may limit the application of the objectionable clause. *See* 206 S.W.3d at 565 (holding that a termination fee provision was unconscionable, but that remainder of the fee agreement was enforceable). Assuming, without deciding, that the provision prohibiting settlement without Davis's consent was severable, we nonetheless conclude that Davis is not entitled to enforcement of the agreement because charging a $70,000 fee for no legal services performed is an unconscionable fee. "A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable." Tex. Disciplinary R. Prof'l Conduct 1.04(a). Here, Davis has not identified any legal services it performed on Tapia's behalf in the twenty-four hours or less that it represented her. As noted, Tapia was interviewed by a Davis employee and did not at any time meet or consult with a lawyer from the Davis firm. Thus, even if we assume, without deciding, that Davis was discharged without cause, its right to seek compensation in quantum meruit or in a suit to enforce the contract is subject to the prohibition against charging or collecting an unconscionable fee. *See id.; Hoover Slovacek,* 206 S.W.3d at 561. We conclude that Davis is not entitled to enforcement of the remainder of the contract. We overrule Davis's fifth issue.

## IV. CONCLUSION

**\*5** We affirm the trial court's judgment.

## All Citations

Not Reported in S.W.3d, 2014 WL 585855

Footnotes

1       We note that the contingency fee agreement and the letter to Davis are both dated the same day, January 16, 2008.

2       Although the record does not explain the relationship between Travelers and Consumers, we note that Davis's Third Amended Petition refers to Davis's notice and demand letters as having been sent to Consumers.

3       Davis's Third Amended Petition states that it brings its suit "by and through" its former client, Tapia.

4       We note that Bates's and Consumers's motions for summary judgment asserted the same grounds and relied on the same evidence except that Bates's motion also asserted that: (1) Davis named Bates as a party but did not assert that he did anything wrong; and (2) Davis did not request issuance of citation and service on Bates until four months after the statute of limitations had expired on all claims against Bates. Because we conclude that the trial court properly granted summary judgment on grounds asserted by both parties, we address Bates's and Consumers's motions together.

5       Bates's motion attached the excerpts of Tapia's deposition testimony and Davis's discovery responses.

6       William Edwards, a personal injury litigator and Davis's retained expert, stated in his deposition testimony that the fee agreement was not unconscionable because the 35% fee was fair when Tapia signed the agreement.

7       Davis asserts that neither Consumers nor Bates had "standing" to challenge Tapia's contingency fee contract with Davis. "[S]tanding focuses on the question of who may bring an action." *The M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 708 (Tex.2001) (quoting *Patterson v. Planned Parenthood,* 971 S.W.2d 439, 442 (Tex.1998)); *see Nootsie, Ltd. v. Williamson County Appraisal Dist.,* 925 S.W.2d 659, 661 (Tex.1996) ("A plaintiff has standing when it is personally aggrieved."). "Questions of standing turn upon the status of the plaintiff rather than the status of the defendant." *Robinson v. Neeley,* 192 S.W.3d 904, 912 (Tex.App.-Dallas 2006, no pet.). Here, Davis, the plaintiff, sued Bates and Consumers, and then challenged their standing. We conclude Davis's second issue is without merit, and we overrule it.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**No. 13-15-00042-CV**

**Belinda Lopez,**
**Appellant**

**v.**

**Santos Maldonado**
**Appellee**

ITEM 2

Texas Disciplinary Rule of Professional Conduct 1.02(a)(2)

Vernon's Texas Statutes and Codes Annotated
    Government Code (Refs & Annos)
        Title 2. Judicial Branch (Refs & Annos)
            Subtitle G. Attorneys
                Title 2, Subtitle G--Appendix
                    A. State Bar Rules
                        Article X. Discipline and Suspension of Members
                            Section 9. Texas Disciplinary Rules of Professional Conduct (Refs & Annos)
                                I. Client-Lawyer Relationship (Refs & Annos)

V.T.C.A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9, Rule 1.02

Rule 1.02. Scope and Objectives of Representation

Currentness

(a) Subject to paragraphs (b), (c), (d), and (e), (f), and (g), a lawyer shall abide by a client's decisions:

(1) concerning the objectives and general methods of representation;

(2) whether to accept an offer of settlement of a matter, except as otherwise authorized by law;

(3) In a criminal case, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

(b) A lawyer may limit the scope, objectives and general methods of the representation if the client consents after consultation.

(c) A lawyer shall not assist or counsel a client to engage in conduct that the lawyer knows is criminal or fraudulent. A lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel and represent a client in connection with the making of a good faith effort to determine the validity, scope, meaning or application of the law.

(d) When a lawyer has confidential information clearly establishing that a client is likely to commit a criminal or fraudulent act that is likely to result in substantial injury to the financial interests or property of another, the lawyer shall promptly make reasonable efforts under the circumstances to dissuade the client from committing the crime or fraud.

(e) When a lawyer has confidential information clearly establishing that the lawyer's client has committed a criminal or fraudulent act in the commission of which the lawyer's services have been used, the lawyer shall make reasonable efforts under the circumstances to persuade the client to take corrective action.

(f) When a lawyer knows that a client expects representation not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

(g) A lawyer shall take reasonable action to secure the appointment of a guardian or other legal representative for, or seek other protective orders with respect to, a client whenever the lawyer reasonably believes that the client lacks legal competence and that such action should be taken to protect the client.

**Credits**
Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990.

<The original Rules Governing the State Bar of Texas, consisting of former articles 1 to 13, were approved by the Supreme Court February 22, 1940.>

<Articles 1 through 9 of the State Bar Rules were adopted and former articles 1 through 11 of the Rules Governing the State Bar of Texas were repealed by Order of the Texas Supreme Court dated March 14, 1983.>

<Article 10 of the State Bar Rules was adopted and article 12, §§ 1 to 7 and 9 to 36, as well as article 13, of the Rules Governing the State Bar were repealed by Order of the Texas Supreme Court dated February 29, 1984, effective March 1, 1984. That same order also restated and continued article 12, § 8, of the Rules Governing the State Bar (the Texas Code of Professional Responsibility) and promulgated such art. 12, § 8 as article 10, § 9, of the State Bar Rules.>

<Article 11 of the State Bar Rules was adopted by order of the Texas Supreme Court dated May 9, 1984.>

<Article 12 of the State Bar Rules, effective June 1, 1986, was adopted by order of the Texas Supreme Court dated December 19, 1985.>

<Article 13 of the State Bar Rules, effective May 15, 1988, was adopted by order of the Texas Supreme Court dated March 14, 1988.>

**Editors' Notes**

**COMMENT:**

**2013 Main Volume**
**Scope of Representation**

1. Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the objectives to be served by legal representation, within the limits imposed by law, the lawyer's professional obligations, and the agreed scope of representation. Within those limits, a client also has a right to consult with the lawyer about the general methods to be used in pursuing those objectives. The lawyer should assume responsibility for the means by which the client's objectives are best achieved. Thus, a lawyer has very broad discretion to determine technical and legal tactics, subject to the client's wishes regarding such matters as the expense to be incurred and concern for third persons who might be adversely affected.

2. Except where prior communications have made it clear that a particular proposal would be unacceptable to the client, a lawyer is obligated to communicate any settlement offer to the client in a civil case; and a lawyer has a comparable responsibility with respect to a proposed plea bargain in a criminal case.

3. A lawyer should consult with the client concerning any such proposal, and generally it is for the client to decide whether or not to accept it. This principle is subject to several exceptions or qualifications. First, in class actions a lawyer may recommend

a settlement of the matter to the court over the objections of named plaintiffs in the case. Second, in insurance defense cases a lawyer's ability to implement an insured client's wishes with respect to settlement may be qualified by the contractual rights of the insurer under its policy. Finally, a lawyer's normal deference to a client's wishes concerning settlement may be abrogated if the client has validly relinquished to a third party any rights to pass upon settlement offers. Whether any such waiver is enforceable is a question largely beyond the scope of these rules. But see comment 5 below. A lawyer reasonably relying on any of these exceptions in not implementing a client's desires concerning settlement is, however, not subject to discipline under this Rule.

**Limited Scope of Representation**

4. The scope of representation provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. For example, a retainer may be for a specifically defined objective. Likewise, representation provided through a legal aid agency may be subject to limitations on the types of cases the agency handles. Similarly, when a lawyer has been retained by an insurer to represent an insured, the representation may be limited to matters related to the insurance coverage. The scope within which the representation is undertaken also may exclude specific objectives or means, such as those that the lawyer or client regards as repugnant or imprudent.

5. An agreement concerning the scope of representation must accord with the Disciplinary Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.01, or to surrender the right to terminate the lawyer's services or the right to settle or continue litigation that the lawyer might wish to handle differently.

6. Unless the representation is terminated as provided in Rule 1.15, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's representation is limited to a specific matter or matters, the relationship terminates when the matter has been resolved. If a lawyer has represented a client over a substantial period in a variety of matters, the client may sometimes assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice to the contrary. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter.

**Criminal, Fraudulent and Prohibited Transactions**

7. A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client's conduct. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not knowingly assist a client in criminal or fraudulent conduct. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.

8. When a client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer may not reveal the client's wrongdoing, except as permitted or required by Rule 1.05. However, the lawyer also must avoid furthering the client's unlawful purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required. See Rule 1.15(a)(1).

9. Paragraph (c) is violated when a lawyer accepts a general retainer for legal services to an enterprise known to be unlawful. Paragraph (c) does not, however, preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise.

10. The last clause of paragraph (c) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.

11. Paragraph (d) requires a lawyer in certain instances to use reasonable efforts to dissuade a client from committing a crime or fraud. If the services of the lawyer were used by the client in committing a crime or fraud, paragraph (e) requires the lawyer to use reasonable efforts to persuade the client to take corrective action.

**Client Under a Disability**

12. Paragraph (a) assumes that the lawyer is legally authorized to represent the client. The usual attorney-client relationship is established and maintained by consenting adults who possess the legal capacity to agree to the relationship. Sometimes the relationship can be established only by a legally effective appointment of the lawyer to represent a person. Unless the lawyer is legally authorized to act for a person under a disability, an attorney-client relationship does not exist for the purpose of this rule.

13. If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client. If a legal representative has not been appointed, paragraph (g) requires a lawyer in some situations to take protective steps, such as initiating the appointment of a guardian. The lawyer should see to such appointment or take other protective steps when it reasonably appears advisable to do so in order to serve the client's best interests. See Rule 1.05(c)(4), d(1) and (d)(2)(i) in regard to the lawyer's right to reveal to the court the facts reasonably necessary to secure the guardianship or other protective order.

Notes of Decisions (19)

V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Rule 1.02, TX ST RPC Rule 1.02
Current with amendments received through 3/15/2015

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**No. 13-15-00042-CV**

**Belinda Lopez,**
**Appellant**

**v.**

**Santos Maldonado,**
**Appellee**


ITEM 3

Texas Disciplinary Rule of Professional Conduct 1.04

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 2. Judicial Branch (Refs & Annos)
      Subtitle G. Attorneys
        Title 2, Subtitle G--Appendix
          A. State Bar Rules
            Article X. Discipline and Suspension of Members
              Section 9. Texas Disciplinary Rules of Professional Conduct (Refs & Annos)
                I. Client-Lawyer Relationship (Refs & Annos)

V.T.C.A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9, Rule 1.04

Rule 1.04. Fees

Currentness

(a) A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable.

(b) Factors that may be considered in determining the reasonableness of a fee include, but not to the exclusion of other relevant factors, the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

(c) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.

(d) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (e) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined. If there is to be a differentiation in the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, the percentage for each shall be stated. The agreement shall state the litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement describing the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

(e) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

(f) A division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is:

(i) in proportion to the professional services performed by each lawyer; or

(ii) made between lawyers who assume joint responsibility for the representation; and

(2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including:

(i) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, and

(ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and

(iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and

(3) the aggregate fee does not violate paragraph (a).

(g) Every agreement that allows a lawyer or law firm to associate other counsel in the representation of a person, or to refer the person to other counsel for such representation, and that results in such an association with or referral to a different law firm or a lawyer in such a different firm, shall be confirmed by an arrangement conforming to paragraph (f). Consent by a client or a prospective client without knowledge of the information specified in subparagraph (f)(2) does not constitute a confirmation

within the meaning of this rule. No attorney shall collect or seek to collect fees or expenses in connection with any such agreement that is not confirmed in that way, except for:

(1) the reasonable value of legal services provided to that person; and

(2) the reasonable and necessary expenses actually incurred on behalf of that person.

(h) Paragraph (f) of this rule does not apply to payment to a former partner or associate pursuant to a separation or retirement agreement, or to a lawyer referral program certified by the State Bar of Texas in accordance with the Texas Lawyer Referral Service Quality Act, Tex. Occ. Code 952.001 et seq., or any amendments or recodifications thereof.

**Credits**

Adopted by order of Oct. 17, 1989, eff. Jan. 1, 1990. Amended by order of Jan. 28, 2005, eff. Mar. 1, 2005.

<The original Rules Governing the State Bar of Texas, consisting of former
articles 1 to 13, were approved by the Supreme Court February 22, 1940.>

<Articles 1 through 9 of the State Bar Rules were adopted and former articles 1 through 11 of the Rules
Governing the State Bar of Texas were repealed by Order of the Texas Supreme Court dated March 14, 1983.>

<Article 10 of the State Bar Rules was adopted and article 12, §§ 1 to 7 and 9 to 36, as well as
article 13, of the Rules Governing the State Bar were repealed by Order of the Texas Supreme
Court dated February 29, 1984, effective March 1, 1984. That same order also restated and
continued article 12, § 8, of the Rules Governing the State Bar (the Texas Code of Professional
Responsibility) and promulgated such art. 12, § 8 as article 10, § 9, of the State Bar Rules.>

<Article 11 of the State Bar Rules was adopted by order of the Texas Supreme Court dated May 9, 1984.>

<Article 12 of the State Bar Rules, effective June 1, 1986, was adopted
by order of the Texas Supreme Court dated December 19, 1985.>

<Article 13 of the State Bar Rules, effective May 15, 1988, was
adopted by order of the Texas Supreme Court dated March 14, 1988.>

**Editors' Notes**

**COMMENT:**

**2013 Main Volume**

1. A lawyer in good conscience should not charge or collect more than a reasonable fee, although he may charge less or no fee at all. The determination of the reasonableness of a fee, or of the range of reasonableness, can be a difficult question, and a standard of "reasonableness" is too vague and uncertain to be an appropriate standard in a disciplinary action. For this reason, paragraph (a) adopts, for disciplinary purposes only, a clearer standard: the lawyer is subject to discipline for an illegal fee or an unconscionable fee. Paragraph (a) defines an unconscionable fee in terms of the reasonableness of the fee but in a way to eliminate factual disputes as to the fee's reasonableness. The Rule's "unconscionable" standard, however, does not preclude use of the "reasonableness" standard of paragraph (b) in other settings.

**Basis or Rate of Fee**

2. When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. If, however, the basis or rate of fee being charged to a regularly represented client differs from the understanding that has evolved, the lawyer should so advise the client. In a new client-lawyer relationship, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount, in order to identity the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding, and when the lawyer has not regularly represented the client it is preferable for the basis or rate of the fee to be communicated to the client in writing. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth. In the case of a contingent fee, a written agreement is mandatory.

**Types of Fees**

3. Historically lawyers have determined what fees to charge by a variety of methods. Commonly employed are percentage fees and contingent fees (which may vary in accordance with the amount at stake or recovered), hourly rates, and flat fee arrangements, or combinations thereof.

4. The determination of a proper fee requires consideration of the interests of both client and lawyer. The determination of reasonableness requires consideration of all relevant circumstances, including those stated in paragraph (b). Obviously, in a particular situation not all of the factors listed in paragraph (b) may be relevant and factors not listed could be relevant. The fees of a lawyer will vary according to many factors, including the time required, the lawyer's experience, ability and reputation, the nature of the employment, the responsibility involved, and the results obtained.

5. When there is a doubt whether a particular fee arrangement is consistent with the client's best interest, the lawyer should discuss with the client alternative bases for the fee and explain their implications.

6. Once a fee arrangement is agreed to, a lawyer should not handle the matter so as to further the lawyer's financial interests to the detriment of the client. For example, a lawyer should not abuse a fee arrangement based primarily on hourly charges by using wasteful procedures.

**Unconscionable Fees**

7. Two principal circumstances combine to make it difficult to determine whether a particular fee is unconscionable within the disciplinary test provided by paragraph (a) of this Rule. The first is the subjectivity of a number of the factors relied on to determine the reasonableness of fees under paragraph (b). Because those factors do not permit more than an approximation of a range of fees that might be found reasonable in any given case, there is a corresponding degree of uncertainty in determining whether a given fee is unconscionable. Secondly, fee arrangements normally are made at the outset of representation, a time when many uncertainties and contingencies exist, while claims of unconscionability are made in hindsight when the contingencies have been resolved. The "unconscionability" standard adopts that difference in perspective and requires that a lawyer be given the benefit of any such uncertainties for disciplinary purposes only. Except in very unusual situations, therefore, the circumstances at the time a fee arrangement is made should control in determining a question of unconscionability.

8. Two factors in otherwise borderline cases might indicate a fee may be unconscionable. The first is overreaching by a lawyer, particularly of a client who was unusually susceptible to such overreaching. The second is a failure of the lawyer to give at the outset a clear and accurate explanation of how a fee was to be calculated. For example, a fee arrangement negotiated at arm's

length with an experienced business client would rarely be subject to question. On the other hand, a fee arrangement with an uneducated or unsophisticated individual having no prior experience in such matters should be more carefully scrutinized for overreaching. While the fact that a client was at a marked disadvantage in bargaining with a lawyer over fees will not make a fee unconscionable, application of the disciplinary test may require some consideration of the personal circumstances of the individuals involved.

**Fees in Family Law Matters**

9. Contingent and percentage fees in family law matters may tend to promote divorce and may be inconsistent with a lawyer's obligation to encourage reconciliation. Such fee arrangements also may tend to create a conflict of interest between lawyer and client regarding the appraisal of assets obtained for client. See also Rule 1.08(h). In certain family law matters, such as child custody and adoption, no res is created to fund a fee. Because of the human relationships involved and the unique character of the proceedings, contingent fee arrangements in domestic relations cases are rarely justified.

**Division of Fees**

10. A division of fees is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fees facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring or associating lawyer initially retained by the client and a trial specialist, but it applies in all cases in which two or more lawyers are representing a single client in the same matter, and without regard to whether litigation is involved. Paragraph (f) permits the lawyers to divide a fee either on the basis of the proportion of services they render or if each lawyer assumes joint responsibility for the representation.

11. Contingent fee agreements must be in a writing signed by the client and must otherwise comply with paragraph (d) of this Rule.

12. A division of a fee based on the proportion of services rendered by two or more lawyers contemplates that each lawyer is performing substantial legal services on behalf of the client with respect to the matter. In particular, it requires that each lawyer who participates in the fee have performed services beyond those involved in initially seeking to acquire and being engaged by the client. There must be a reasonable correlation between the amount or value of services rendered and responsibility assumed, and the share of the fee to be received. However, if each participating lawyer performs substantial legal services on behalf of the client, the agreed division should control even though the division is not directly proportional to actual work performed. If a division of fee is to be based on the proportion of services rendered, the arrangement may provide that the allocation not be made until the end of the representation. When the allocation is deferred until the end of the representation, the terms of the arrangement must include the basis by which the division will be made.

13. Joint responsibility for the representation entails ethical and perhaps financial responsibility for the representation. The ethical responsibility assumed requires that a referring or associating lawyer make reasonable efforts to assure adequacy of representation and to provide adequate client communication. Adequacy of representation requires that the referring or associating lawyer conduct a reasonable investigation of the client's legal matter and refer the matter to a lawyer whom the referring or associating lawyer reasonably believes is competent to handle it. See Rule 1.01. Adequate attorney-client communication requires that a referring or associating lawyer monitor the matter throughout the representation and ensure that the client is informed of those matters that come to that lawyer's attention and that a reasonable lawyer would believe the client should be aware. See Rule 1.03. Attending all depositions and hearings or requiring that copies of all pleadings and correspondence be provided a referring or associating lawyer is not necessary in order to meet the monitoring requirement proposed by this rule. These types of activities may increase the transactional costs, which ultimately the client will bear and unless some benefit will be derived by the client, they should be avoided. The monitoring requirement is only that the referring lawyer be reasonably informed of the matter, respond to client questions, and assist the handling lawyer when necessary. Any referral or association of other counsel should be made based solely on the client's best interest.

14. In the aggregate, the minimum activities that must be undertaken by referring or associating lawyers pursuant to an arrangement for a division of fees are substantially greater than those assumed by a lawyer who forwarded a matter to other counsel, undertook no ongoing obligations with respect to it, and yet received a portion of the handling lawyer's fee once the matter was concluded, as was permitted under the prior version of this rule. Whether such activities, or any additional activities that a lawyer might agree to undertake, suffice to make one lawyer participating in such an arrangement responsible for the professional misconduct of another lawyer who is participating in it and, if so, to what extent, are intended to be resolved by Texas Civil Practice and Remedies Code, ch. 33, or other applicable law.

15. A client must consent in writing to the terms of the arrangement prior to the time of the association or referral proposed. For this consent to be effective, the client must have been advised of at least the key features of that arrangement. Those essential terms, which are specified in subparagraph (f)(2), are 1) the identity of all lawyers or law firms who will participate in the fee-sharing agreement, 2) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation, and 3) the share of the fee that each lawyer or law firm will receive or the basis on which the division will be made if the division is based on proportion of service performed. Consent by a client or prospective client to the referral to or association of other counsel, made prior to any actual such referral or association, but without knowledge of the information specified in subparagraph (f)(2) does not constitute sufficient client confirmation within the meaning of this rule. The referring or associating lawyer or any other lawyer who employs another lawyer to assist in the representation has the primary duty to ensure full disclosure and compliance with this rule.

16. Paragraph (g) facilitates the enforcement of the requirements of paragraph (f). It does so by providing that agreements that authorize an attorney either to refer a person's case to another lawyer, or to associate other counsel in the handling of a client's case, and that actually result in such a referral or association with counsel in a different law firm from the one entering into the agreement, must be confirmed by an arrangement between the person and the lawyers involved that conforms to paragraph (f). As noted there, that arrangement must be presented to and agreed to by the person before the referral or association between the lawyers involved occurs. See subparagraph (f)(2). Because paragraph (g) refers to the party whose matter is involved as a "person" rather than as a "client," it is not possible to evade its requirements by having a referring lawyer not formally enter into an attorney-client relationship with the person involved before referring that person's matter to other counsel. Paragraph (g) does provide, however, for recovery in quantum meruit in instances where its requirements are not met. See subparagraphs (g)(1) and (g)(2).P

17. What should be done with any otherwise agreed-to fee that is forfeited in whole or in part due to a lawyer's failure to comply with paragraph (g) is not resolved by these rules.

18. Subparagraph (f)(3) requires that the aggregate fee charged to clients in connection with a given matter by all of the lawyers involved meet the standards of paragraph (a)--that is, not be unconscionable.

**Fee Disputes and Determinations**

19. If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by a bar association, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, or when a class or a person is entitled to recover a reasonable attorney's fee as part of the measure of damages. All involved lawyers should comply with any prescribed procedures.

(Comment amended by Supreme Court Jan. 28, 2005, eff. March 1, 2005.)

Notes of Decisions (77)

V. T. C. A., Govt. Code T. 2, Subt. G App. A, Art. 10, § 9 Rule 1.04, TX ST RPC Rule 1.04
Current with amendments received through 3/15/2015

**End of Document**                                                                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.